# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

O'HALLORAN v SECRETARY OF STATE
DEVISSER v SECRETARY OF STATE

Docket Nos. 166424 and 166425. Argued on application for leave to appeal June 18, 2024. Decided August 28, 2024.

Phillip M. O'Halloran, Braden Giacobazzi, and others (collectively, the O'Halloran plaintiffs) (Docket No. 166424), and Richard DeVisser and others (collectively, the DeVisser plaintiffs) (Docket No. 166425), filed separate actions in the Court of Claims against the Secretary of State and the Director of the Bureau of Elections, challenging several provisions in a manual titled "The Appointment, Rights, and Duties of Election Challengers and Poll Watchers" that the Secretary of State revised in 2022 (the 2022 manual). Beginning with the August 2022 primary election, the 2022 manual provided revised instructions and guidance for election challengers and poll watchers; the O'Halloran plaintiffs and the DeVisser plaintiffs (collectively, plaintiffs) filed these separate actions before the general election in November 2022. Both groups of plaintiffs sought an emergency injunction compelling defendants to rescind the manual and issue new guidance, arguing that the challenged provisions conflicted with the Michigan Election Law, MCL 168.1 *et seq.*, or that the provisions constituted rules that had to be promulgated in accordance with the Administrative Procedures Act (APA), MCL 24.201 *et seq.* The Court of Claims consolidated the cases, and defendants moved for summary disposition. The court, BROCK A. SWARTZLE, J., denied defendants' motions and granted, in part, plaintiffs' requests for relief. In reaching those conclusions, the Court of Claims determined that the following 2022 manual provisions violated the Michigan Election Law and were therefore invalid: (1) the provisions requiring that election-challenger credentials must be on a particular form created by the Secretary of State; (2) the provisions requiring that election challengers must communicate challenges only to the challenger liaison or the challenger-liaison's designee unless otherwise instructed by the challenger liaison or a member of the clerk's staff (the challenger-liaison provision); (3) the provisions distinguishing between impermissible and permissible challenges, and the requirement to record in the pollbook only permissible challenges; and (4) the provision restricting challengers from having certain electronic devices in an absent voter ballot processing facility (AVBPF) while absent voter ballots are being processed until the close of polls on Election Day. To remedy these violations, the Court of Claims instructed defendants that they could rescind the 2022 manual in its entirety or revise it to comply with the court's opinion. Defendants appealed in each case, and the Court of Appeals consolidated the appeals in an unpublished order entered on October 31, 2022 (Docket Nos. 363503 and 363505). Before the Court of Appeals resolved the appeal, defendants sought leave

to appeal in the Supreme Court, seeking to bypass the Court of Appeals and a stay of the Court of Claims opinion and order until the conclusion of the appeals. The Supreme Court denied the bypass application but stayed the Court of Claims opinion and order and any subsequent decision of the Court of Appeals pending the appeal period for the filing of an application for leave to appeal in the Supreme Court. 510 Mich 970 (2022) (Docket No. 166424); 510 Mich 994 (2022) (Docket No. 164955). The Court of Appeals thereafter affirmed the opinion and order of the Court of Claims. ___ Mich App ___ (October 19, 2023) (Docket Nos. 363503 and 363505); amended slip op at 2, 14-15. Defendants sought leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant defendants' application. ___ Mich ___; 6 NW3d 397 (2024).

In an opinion by Justice BOLDEN, joined by Justices BERNSTEIN, CAVANAGH, and WELCH, the Supreme Court, in lieu of granting leave to appeal, *held*:

The Secretary of State has authority under the Michigan Election Law to require election challengers to use a uniform form for their credentials, i.e., to use the Michigan Challenger Credential Card, and she was not required to promulgate the requirement as a rule because it falls within the exception to rulemaking under MCL 24.207(h). The challenger-liaison provision is lawful except to the extent it requires a challenger at an AVBPF to raise an issue listed in MCL 168.733(1)(e) to a challenger liaison who is not also an election inspector at that facility, and the challenger-liaison provision also did not constitute a rule that had to be promulgated through the APA. The designation of challenges as "permissible" and "impermissible" and the requirement to record in the pollbook only permissible challenges are lawful under the Michigan Election Law except to the extent the provisions provide that the challenger liaison may deem the reason for the challenger's belief impermissible, and therefore decline to record the challenge, if the reason provided bears no relation to criteria cited by the challenger or if the provided reason is obviously inapplicable or incorrect; the provisions that do not conflict with the Michigan Election Law fall within the exemption to rulemaking under MCL 24.207(h) because they are interpretive statements. The challenges to provisions banning electronic devices from AVBPFs while absent voter ballots are being processed until the close of polls on Election Day were moot because of subsequent statutory amendments, and the lower court opinions and orders regarding that issue were therefore vacated.

1. Under the Michigan Election Law, the Secretary of State is the chief election officer of Michigan, and as such, the Secretary has supervisory control over local election officials in the performance of their duties. Subject to MCL 168.31(2)—which concerns the Secretary of State's authority to promulgate rules—MCL 168.31(1) requires the Secretary to perform certain duties, including to: (1) issue instructions and promulgate rules pursuant to the APA for the conduct of elections and registrations in accordance with Michigan law, MCL 168.31(1)(a); (2) advise and direct local election officials regarding the proper methods of conducting elections, MCL 168.31(1)(b); (3) publish and furnish before each state primary and general election a manual of instructions that includes procedures and forms for processing challenges, MCL 169.31(1)(c); and (4) prescribe and require uniform forms that the Secretary considers advisable for use in the conduct of elections and registrations, MCL 168.31(1)(e); and (5) investigate and report violations of election laws and regulations, MCL 168.31(1)(h). While the phrase "for use in the conduct of elections" is not defined in the Michigan Election Law, the authority provided under the phrase includes mandating the use of uniform forms that are deemed necessary or helpful to the act,

manner, or process of carrying on a primary or general election. With regard to rulemaking, MCL 168.31(2) requires the Secretary of State to promulgate rules through the APA rulemaking process to establish uniform standards for state and local nominating, recall, and ballot question petition signatures. MCL 168.31(1) provides the Secretary of State with a degree of discretion in choosing what process to use to fulfill her remaining duties. In turn, MCL 168.765a(17) provides a separate requirement, mandating that the Secretary develop instructions consistent with the Michigan Election Law for the conduct of absent voter counting boards, or combined absent voter counting boards, that are binding on the operation of an absent voter counting board, or combined absent voter counting board, used in an election conducted by a county, city, or township.

2. Various provisions of the Michigan Election Law set forth the process for appointing election challengers. Under MCL 168.732, every election challenger appointed under MCL 168.730 or MCL 168.731 must possess the following three requirements to be credentialed: (1) authority signed by the appropriate individual, as recognized by the statute; (2) the written or printed name of the challenger; and (3) the number of the precinct to which the challenger is assigned. Every credential must include these requirements, and no additional substantive requirement may be imposed by the Secretary of State. Requiring election challengers to use a uniform form for their credential—i.e., the Michigan Challenger Credential Card—does not alter what evidence is sufficient to become credentialed and does not conflict with MCL 168.732.

3. MCL 168.727 and MCL 168.733 both address the authority of election challengers. Specifically, MCL 168.727(1) provides that an election inspector or other qualified challenger may challenge the right of an individual attempting to vote who has previously applied for an absent voter ballot and who on Election Day is claiming to have never received the absent voter ballot or to have lost or destroyed the absent voter ballot. MCL 168.727(2)(b) and (c) state that when a challenge is made under MCL 168.727(1), an election inspector must immediately take certain actions, including making a written report, and that report must be made a part of the election record. While election inspectors have implicit authority to determine whether a challenge is one under MCL 168.727(1) such that they are required to report it, they cannot decline to report a challenge on the basis of their personal assessment of the validity or merit of the challenge. MCL 168.733(1) also grants election challengers authority to perform multiple tasks, including challenging the voting rights of a person the challenger has good reason to believe is not a registered elector, bringing to an election inspector's attention improper handling of a ballot by an elector or an election inspector, and violations of certain statutes and election procedures. The right of a challenger to bring certain issues to the attention of "an" election inspector under MCL 168.733(1)(e) does not grant the challenger the right to call matters to the attention of *any* election inspector of their choosing; instead, the provision provides an opportunity to call matters to the attention of at least one election inspector. Indeed, nothing in MCL 168.727 explicitly provides a challenger the right to speak directly to *any* election inspector, let alone the right to speak to *all* election inspectors. When a challenge is made under MCL 168.727(1), MCL 168.727(2)(b) provides that an election inspector must immediately make a written report that includes all disparities or infractions complained of or believed to have occurred, the name and time of the challenge, specified information about the challenged individual, and other information considered appropriate by the election inspector. The Michigan Election Law also contains provisions addressing when challengers and other individuals violate the act's terms. These safeguards are buttressed by MCL 168.678, which states that each board of election inspectors possesses full

authority to maintain peace, regularity, and order at its polling place, and to enforce obedience to their lawful commands.

4. The APA provides a formal process that an agency must follow to promulgate a rule that has the force and effect of law. Under MCL 24.207, a "rule" is an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency. Importantly, there are several exceptions to the definition of a rule, including MCL 24.207(h), which exempts from the rulemaking process a form with instructions, an interpretive statement, a guideline, an informational pamphlet, or other material that in itself does not have the force and effect of law but is merely explanatory. Thus, when a statute does not require rulemaking for its interpretation, an agency may choose to issue "interpretive rules," which would fall under the MCL 24.207(h) rulemaking exception as policy statements that give guidance but do not have the force and effect of law. An interpretive rule is any rule an agency issues without exercising delegated legislative power to make law through rules, i.e., those that interpret and apply the provisions of the statute under which the agency operates, the violation of which does not result in a sanction. Stated differently, an interpretive statement lacks the force and effect of law because it is the underlying statute that determines how an entity must act, i.e., that alters rights or imposes obligations.

5. In this case, the Secretary of State had authority under the Michigan Election Law to require election challengers to use a uniform form for their credentials, i.e., to use the Michigan Challenger Credential Card, and she was not required to promulgate the requirement as a rule because it falls within the MCL 24.207(h) exception to rulemaking. The 2022 manual provides that the challenger-credential form must contain the information required by MCL 168.732 and that the information must be included on the uniform form provided by the Secretary of State. While MCL 168.732 sets out the three things that must be included on the authority that serves as a credential for election challengers, the provision does not indicate what form the credential may take. Importantly, the manual does not add any substantive requirements beyond those listed in MCL 168.732. Thus, the 2022 manual's requirement that election challengers must use the Michigan Challenger Credential Card does not alter what evidence is sufficient to become credentialed and therefore does not conflict with MCL 168.732. The lower courts mistakenly conflated the requirement that a particular form be used with a substantive requirement within that form. In concluding that required use of the Michigan Challenger Credential Card violated MCL 168.732, the lower courts ignored MCL 168.31(1)(e), which requires the Secretary of State to prescribe and require uniform forms for use in the conduct of elections; the latter provision authorized the Secretary to mandate use of the Michigan Challenger Credential Card. Finally, the credential-form requirement did not amount to a formal rule requiring promulgation through the APA because it fell within the MCL 24.207(h) exception that a formal rule does not include a form with instructions that in itself does not have the force and effect of law but is merely explanatory; the form merely instructs challengers on how to submit the statutorily required evidence to be credentialed.

6. The challenger-liaison provision in the 2022 manual—that election challengers "must not communicate with election inspectors who are not the challenger liaison unless otherwise instructed by the challenger liaison or a member of the clerk's staff"—was lawful except to the

extent it requires a challenger at an AVBPF to raise an issue listed in MCL 168.733(1)(e) to a challenger liaison who is not also an election inspector at that facility. The right of a challenger to bring certain issues to the attention of "an" election inspector under MCL 168.733(1)(e) does not grant the challenger the right to call matters to the attention of *any* election inspector of their choosing; instead, the provision allows an election challenger the opportunity to call matters to the attention of at least one election inspector. With regard to challenges raised at a polling place, because the manual provides that the challenger liaison at a *polling place* is a designated election inspector, the challenger-liaison provision does not violate Michigan Election Law as applied to polling places. However, the manual is inconsistent with the Michigan Election Law to the extent it requires a challenger at an *AVBPF* to raise an issue under MCL 168.733(1)(e) *solely* to a challenger liaison who is *not* an election inspector. While MCL 168.727 and MCL 168.733 create express rights for election challengers to raise challenges, these statutory provisions are silent regarding to whom such challenges must be brought. Nothing in the Michigan Election Law prohibits the Secretary from providing instructions regarding to whom the "challenges" listed in those statutes must be directed. Accordingly, it is within the Secretary's authority under MCL 168.31(1)(a) and (c) to specify a process as to the proper method for processing challenges. The Court of Appeals erred by concluding that MCL 168.733(1)(e) "explicitly authorizes challengers to communicate with any election inspector." Instead, reading the provisions harmoniously, MCL 168.31(1)(c), MCL 168.727, and MCL 168.733 provide election challengers the authority to make challenges or raise other issues regarding the proper conduct of elections, but the provisions do not provide challengers the right to raise these issues to *any* and *all* election inspectors serving at a particular location. The challenger-liaison provisions are consistent with the Michigan Election Law and do not require formal rulemaking because they fit squarely within the MCL 24.207(h) exception to the APA's rulemaking requirement. Interpretive statements do not have "the force and effect of law" as applied to challengers; while the limitation on speaking with any election inspector other than one identified as the challenger liaison is stated in mandatory terms, the manual does not require inspectors to expel challengers who violate that prohibition. Rather, it instructs election inspectors to warn a challenger after a first violation, and if that challenger repeatedly violates the prohibition despite the warning, the election inspector may, in their discretion, eject that challenger. Because these permissible provisions simply provide interpretive statements regarding how election inspectors should exercise their pre-existing discretionary authority under MCL 168.678 and MCL 168.733(3) and do not impose any new substantive requirement or limitation on challengers, the provisions lack the "force and effect of law" and did not have to be promulgated as a rule through the APA.

7. The 2022 manual, which establishes provisions that distinguish between impermissible and permissible challenges and adds the requirement to record in the pollbook only permissible challenges, is lawful under the Michigan Election Law except to the extent the provisions provide that "the challenger liaison may deem the reason for the challenger's belief impermissible [and therefore decline to record the challenge] if the reason provided bears no relation to criteria cited by the challenger, or if the provided reason is obviously inapplicable or incorrect." The 2022 manual states that the following types of challenges are permissible regarding voter eligibility: (1) the person is not registered to vote, (2) the person is less than 18 years of age, (3) the person is not a United States citizen, and (4) the person has not lived in the voting district for at least 30 days before the election. Various provisions of the Michigan Election Law support that these are the requirements for qualified and registered electors, and it is within the Secretary of State's authority

under MCL 168.31(1)(a) and (c) to attach the label "permissible" challenge. Because the manual correctly identifies what qualifies as a statutorily permissible challenge, it was reasonable for the Secretary to label all other challenges as "impermissible challenges." The manual's nonexhaustive list of impermissible challenges provides examples of the types of challenges that would fall outside the scope of a "permissible" challenge, and the Secretary's identification of these improper bases as "impermissible challenges" does not violate the Michigan Election Law simply because the act does not use that precise term; indeed, the words "permissible" and "impermissible" are merely organizational and are consistent with an agency document intended to interpret and explain the requirements of the Michigan Election Law without restating those statutes verbatim. Under MCL 168.31(1)(c), the Secretary of State has authority to include in the manual most of the provisions regarding permissible and impermissible challenges. Thus, the Secretary has authority to include in the manual the following: (1) a list of permissible and impermissible reasons for a voter-eligibility challenge that accurately reflects the statutory requirements for eligibility to vote and (2) instructions that challenger liaisons need not record a voter-eligibility challenge if the challenger does not provide a permissible reason for the challenge or some explanation for the basis of their challenge. However, the manual improperly instructs that the challenger liaison may deem the reason for the challenger's belief impermissible if the provided reason bears no relation to criteria cited by the challenger, or if the provided reason is obviously inapplicable or incorrect. Stated more fully, the manual properly instructs election inspectors that they may decline to record a challenge if a challenger fails to provide a permissible factual basis for a challenge or if the challenger fails to provide an explanation as to the factual basis for their challenge. MCL 168.727(2)(b) and (c) state that when a challenge is made under MCL 168.727(1), an election inspector must immediately take certain actions, including making a written report; that report must then be made a part of the election record. Notably, this mandatory recording requirement applies only to challenges under MCL 168.727(1), and not to any challenge that may be raised under MCL 168.733. Given the limited scope of the mandatory recording requirement, an election inspector must have implicit authority to determine whether a challenge falls within the scope of challenges that must be recorded. Thus, the manual properly instructs election officials that they need not record a challenge unless the challenger articulates a permissible factual basis for that challenge. However, the manual's instruction that a challenger liaison "may deem the reason for the challenger's belief impermissible [and therefore decline to record the challenge] if the reason provided bears no relation to criteria cited by the challenger, or if the provided reason is obviously inapplicable or incorrect" is improper. While election inspectors have implicit authority to determine whether a challenge is one under MCL 168.727(1) such that they are required to record it, they cannot decline to record a challenge on the basis of their personal assessment of the validity or merit of the challenge. The provision goes beyond instructing election inspectors to ensure that a challenge is the kind that must be recorded and instead requires them to assess the validity of a challenge as a precondition to recording it, which conflicts with the Michigan Election Law; to the extent the manual assigns the label "impermissible," and thus not subject to a recording requirement as a "challenge made without a sufficient basis" under MCL 168.727(1), the provision is limited to a challenger's failure to provide a prima facie factual basis for a challenge and not an election inspector's assessment of the validity or merits of a challenge. The manual provisions that do not conflict with the Michigan Election Law fall within the exemption to rulemaking under MCL 24.207(h). The permissible provisions are interpretive rules regarding the Michigan Election Law that lack the force and effect of law as applied to challengers; the manual does not mandate

expulsion for any violation of these provisions but merely reflects the pre-existing discretionary authority of election inspectors to maintain peace and ensure compliance with lawful orders.

8. The 2022 election manual provided that "[n]o electronic devices capable of sending or receiving information, including phones, laptops, tablets, or smartwatches, are permitted in an [AVBPF] while absent-voter ballots are being processed until the close of polls on Election Day." The Legislature amended MCL 168.765a after the complaints in these consolidated cases were filed. The amendment added Subsection (18), which effectively permits the possession and limited use of electronic devices in AVBPFs. In response to the amendment, the Secretary of State removed the provision that completely prohibited electronic devices. Because the challenged provisions are not in the 2024 version of the election manual, plaintiffs' challenge of those provisions in the 2022 manual is moot. Consequently, the lower court opinions and orders addressing the 2022 manual's prohibition on electronic devices in those facilities were vacated.

Affirmed in part, reversed in part, and vacated in part.

Chief Justice CLEMENT, concurring part and dissenting in part, agreed with majority that plaintiffs' challenge to the provision in the 2022 manual related to electronic devices in AVBPFs was moot. Chief Justice CLEMENT agreed with the conclusions reached by Justice ZAHRA in his separate opinion that (1) the requirement of a uniform challenger-credential form conflicts with MCL 168.732; (2) the manual's requirement that every election challenger must direct their challenges to a single challenger liaison conflicts with MCL 168.733(1)(e) and is inconsistent with the goals of party parity expressed elsewhere in the Michigan Election Law; (3) the requirement that election inspectors record only what the manual identifies as permissible challenges violates MCL 168.727(2)(b); and (4) the provision that election challengers may be removed for repeated "impermissible" challenges conflicts with the challenger's right to be present under 168.732, unless that conduct constitutes "disorderly conduct" under MCL 168.733(3). Chief Justice CLEMENT stated that it was not necessary to address whether the manual's provisions had the force and effect of law because the conflicts between the manual's provisions and the Michigan Election Law rendered the provisions invalid on their own.

Justice ZAHRA, concurring in part and dissenting in part, joined by Justice VIVIANO, agreed with the majority that plaintiffs' challenge of the provisions in the 2022 manual related to electronic devices in AVBPFs was moot; that the 2022 manual unlawfully requires a challenger at an AVBPF to raise an issue listed in MCL 168.733(1)(e) to a challenger liaison who is not also an election inspector at that facility; and that an election inspector cannot decline to record a challenge on the basis that they believe the explanation provided is lacking or insufficient. Justice ZAHRA wrote separately to explain that the remaining challenged provisions also conflict with the Michigan Election Law and that the provisions actually constitute rules that must be followed—rules that were created without any public discussion, accountability, or transparency, as required by the APA. With regard to the election-challenger credential card, MCL 168.732 provides three requirements that constitute sufficient evidence of a challenger's right to be present inside the room where the ballot box is kept; this provision does not require the newly created Michigan Challenger Credential Card and does not require that the authority be on a particular form promulgated by the Secretary of State. Further, the statute does not support a finding that an election challenger's credentials can be thrown out simply because the challenger did not present their authority on the

Michigan Challenger Credential Card. The card requirement precludes a prospective challenger from functioning as a challenger and has nothing to do with the Secretary of State's authority under MCL 168.31(1)(c) to outline procedures and draft forms for processing challenges. In addition, the Secretary's authority under MCL 168.31(1)(e) to prescribe and require uniform forms that she considers advisable in the conduct of elections does not authorize her to create and mandate use of the challenger-credential form, and this authority cannot be interpreted to supplement the Secretary's authority under MCL 168.31(1)(c). Accordingly, nothing in MCL 168.731(1) grants the Secretary authority to impose the additional requirement of the Michigan Challenger Credential Card. The challenger-liaison provision, which requires challengers to bring all election challenges to a single designated challenger liaison, who may or may not be an election inspector, also violates the Michigan Election Law because it unduly restricts the rights of election challengers to make challenges through *any* election inspector on site, which had been allowed in practice for many years before the 2022 revisions to the manual. These provisions—which significantly alter the practice of allowing challengers to directly communicate with election inspectors—constitute a rule with the force and effect of law because they cannot be characterized as instruction, clarification, or guidance as allowed by MCL 168.733. In addition, the provisions directly contradict the goal of party parity expressed elsewhere in the Michigan Election Law. Further, while the majority correctly acknowledges that the manual unlawfully requires a challenger at an AVBPF to raise an issue listed in MCL 168.733(1)(e) to a challenger liaison who is not also an election inspector at that facility, the majority disregards the fact that by requiring a single challenger liaison, the party-parity requirements built into the statutory structure will be significantly altered. Indeed, the restriction on the ability of challengers to communicate challenges or violations to election inspectors is unsupported by any statute, caselaw, or promulgated rule. Moreover, by interpreting the phrase "an election inspector" in MCL 168.733(1)(e) to mean only a specific person—i.e., the challenger liaison, who may or may not be an election inspector—as the person to whom challenges are to be presented, the majority erroneously converts the indefinite article "an" into a definite article, which is the lone challenger liaison. Finally, nothing in the Michigan Election Law permits the newly created challenger liaison to categorize challenges as permissible or impermissible or to segregate challenges on the basis of the liaison's determination of whether the challenge has merit. In fact, the 2022 manual erroneously allows challenges to a voter's registration to be dismissed even though they are otherwise permitted under the Michigan Election Law. In addition, the Secretary does not have authority to authorize the ejection of election challengers for repeated "impermissible" challenges, absent the limited circumstances already provided by Michigan law, because this instruction conflicts with a challenger's right to be present under MCL 168.732. In sum, the majority's decision will result in many Michigan voters doubting the integrity of the state's election process. For these reasons, Justice ZAHRA would have affirmed the lower courts' decisions in full.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED August 28, 2024

STATE OF MICHIGAN

SUPREME COURT

PHILIP M. O'HALLORAN, M.D.,
BRADEN GIACOBAZZI, ROBERT
CUSHMAN, PENNY CRIDER, and
KENNETH CRIDER,

        Plaintiffs-Appellees,

v                                  No. 166424

SECRETARY OF STATE and DIRECTOR
OF THE BUREAU OF ELECTIONS,

        Defendants-Appellants.

RICHARD DEVISSER, MICHIGAN
REPUBLICAN PARTY, and
REPUBLICAN NATIONAL COMMITTEE,

        Plaintiffs-Appellees,

v                                  No. 166425

SECRETARY OF STATE and DIRECTOR
OF THE BUREAU OF ELECTIONS,

Defendants-Appellants.

BEFORE THE ENTIRE BENCH

BOLDEN, J.

In May 2022, the Secretary of State issued updates to a manual titled "The Appointment, Rights, and Duties of Election Challengers and Poll Watchers" in order to provide instructions and guidance for election challengers and poll watchers. Two separate, since-consolidated lawsuits were filed by different sets of plaintiffs to challenge several provisions in the May 2022 manual update. In particular, the complaints asserted that either the challenged provisions were contrary to the Michigan Election Law, MCL 168.1 *et seq.*, or that the challenged provisions transformed the manual into an administrative rule that needed to be promulgated through the formal process outlined in the Administrative Procedures Act (APA), MCL 24.201 *et seq.* The Court of Appeals affirmed the Court of Claims and held that the challenged provisions were either contrary to the Michigan Election Law or were regulations that must be promulgated as rules by following formal APA processes. *O'Halloran v Secretary of State*, ___ Mich App ___, ___; ___ NW3d ___ (October 19, 2023) (Docket Nos. 363503 and 363505); amended slip op at 14. We reverse in part, affirm in part, and vacate in part.

## I. FACTS AND PROCEDURAL HISTORY

Since at least October 2004, the Secretary of State has published to its public website a manual with the name "The Appointment, Rights, and Duties of Election Challengers and Poll Watchers." See *O'Halloran*, ___ Mich App at ___; amended slip op at 2. The

May 2022 update is the subject of this opinion. See Michigan Bureau of Elections, *The Appointment, Rights, and Duties of Election Challengers and Poll Watchers* (May 2022).[1] As noted by the Court of Appeals, the purpose of the May 2022 manual is " 'to familiarize election challengers, poll watchers, election inspectors, and members of the public with the rights and duties of election challengers and poll watchers in Michigan.' " *O'Halloran*, ___ Mich App at ___; amended slip op at 2 n 2, quoting the manual, p 1. The manual has been updated several times over the years. *O'Halloran*, ___ Mich App at ___; amended slip op at 2. This version was used as a guide beginning with the August 2022 primary election.[2] Before the 2022 general election, two lawsuits were filed in the Court of Claims, challenging several provisions in the manual. These lawsuits are now the subject of this opinion.

The first complaint was filed on September 29, 2022, by plaintiffs Philip M. O'Halloran, Braden Giacobazzi, Robert Cushman, Penny Crider, and Kenneth Crider (collectively, the O'Halloran plaintiffs). The O'Halloran plaintiffs sued the Secretary of State, Jocelyn Benson, and Jonathan Brater, the Director of the Michigan Bureau of Elections, in their official capacities, seeking an emergency injunction that would compel

---

[1] For the remainder of this opinion, the May 2022 update to "The Appointment, Rights, and Duties of Election Challengers and Poll Watchers" will be referred to, simply, as "the manual." The 2024 version of the manual is materially the same for the purposes of this case except for the removal of the provisions addressing possession of electronic devices, which is discussed later in this opinion. For that reason, we refer to provisions in the manual in the present tense, with the exception of the provisions addressing possession of electronic devices.

[2] To the best of our knowledge, the August 2022 primary election was held without a challenge to the manual's provisions.

defendants to rescind the manual and reissue new guidance. The O'Halloran plaintiffs complained that the challenged provisions conflicted with the Michigan Election Law or required APA promulgation. They argued that the relief they were seeking was warranted to prevent further propagation of the allegedly improper guidance for training future election inspectors and challengers.

One day later, on September 30, 2022, plaintiffs Richard DeVisser, the Michigan Republican Party, and the Republican National Committee (collectively, the DeVisser plaintiffs), filed a separate legal challenge against the same defendants. The DeVisser plaintiffs sought emergency declaratory relief under MCR 2.605(D), asking the court to declare that the manual was inconsistent with the Michigan Election Law and was unenforceable and that it amounted to promulgated rules that were not promulgated through the APA. They also sought an injunction against implementing the manual and an injunction ordering defendants to rescind the manual and reissue a prior version.

The Court of Claims considered the two complaints and consolidated the cases. Defendants moved for summary disposition under MCR 2.116(C)(4), (8), and (10). Without hearing oral argument, the Court of Claims issued an opinion and order. In the opinion, the Court of Claims denied defendants' motions and granted plaintiffs' requests for relief in part. As explained by the Court of Appeals, the Court of Claims identified five specific challenged areas within the manual that entitled plaintiffs to relief. *O'Halloran*, ___ Mich App at ___; amended slip op at 4.[3]

---

[3] For readability purposes, when it is not necessary to identify the O'Halloran plaintiffs and the DeVisser plaintiffs separately, we refer to them collectively as "plaintiffs." Although the Court of Claims found in plaintiffs' favor for five challenges, the fifth challenge was

4

The first area of the manual that the Court of Claims found to be invalid is the provision titled "Form of Challenger Credential." See *id*. at ___; amended slip op at 4, 8-10 (discussing the Court of Claims opinion and order). The manual describes this requirement, in pertinent part, as follows:

> Under Michigan law, each challenger present at a polling place or an absent voter ballot processing facility must possess an authority signed by the chairman or presiding officer of the organization sponsoring the challenger. This authority, also known as the *Michigan Challenger Credential Card*, must be on a form promulgated by the Secretary of State. The blank template credential form is available on the Secretary of State's website. The entire credential form, including the challenger's name, the date of the election at which the challenger is credentialed to serve, and the signature of the chairman or presiding officer of the organization appointing the challenger, must be completed. If the entire form is not completed, the credential is invalid and the individual presenting the form cannot serve as a challenger. The credential may not be displayed or shown to voters.
>
> A credential form may be digital and may be presented on a phone or other electronic device. If a challenger uses a digital credential, the credential must include all of the information required on the template credential form promulgated by the Secretary of State. A digital credential should not include any information or graphics that are not included or requested on the template credential form. If a challenger using a digital credential is serving in an absent voter ballot processing facility on Election Day, the challenger must display the credential to the appropriate election official, gain approval to enter the facility, and then store the device in a place outside of the absent voter ballot processing facility. [The manual, pp 4-5.]

The second area of the manual that the Court of Claims found to be invalid is the "Challenger Liaison" provision. See *O'Halloran*, ___ Mich App at ___; amended slip op at 4, 10-11 (discussing the Court of Claims opinion and order). The manual describes this requirement, in pertinent part, as follows:

---

to a bar on appointing challengers on Election Day. This issue was never appealed, and we do not address it in this opinion.

Every polling place or absent voter ballot processing facility should have an election inspector designated as the challenger liaison. Unless otherwise specified by the local clerk, the challenger liaison at a polling place is the precinct chairperson. The challenger liaison or precinct chairperson may designate one or more additional election inspectors to serve as challenger liaison, or as the challenger liaison's designees, at any time. Unless otherwise specified by the local clerk, the challenger liaison at an absent voter ballot processing facility is the most senior member of the clerk's staff present, or, if no members of the clerk's staff are present, the challenger liaison is the chairperson of the facility. Unless otherwise specified by the local clerk, the challenger liaison at the clerk's office is the most senior member of the clerk's staff present.

**Challengers must not communicate with election inspectors other than the challenger liaison or the challenger liaison's designee unless otherwise instructed by the challenger liaison or a member of the clerk's staff.** [The manual, pp 5-6.]

The third area of the manual that the Court of Claims found to be invalid is the distinction between impermissible and permissible challenges and the requirement to record in the poll book only permissible challenges. See *O'Halloran*, ___ Mich App at ___; amended slip op at 4, 11-13 (discussing the Court of Claims opinion and order). The manual describes these requirements in two sections titled "Adjudicating and Recording Challenges" and "Challenges to a Voter's Eligibility." In pertinent part, these provisions state:

There are three categories of challenges: impermissible challenges, rejected challenges, and accepted challenges. The challenger liaison is responsible for adjudicating each challenge by categorizing each challenge and determining what, if any, action should be taken in response to the challenge.

*Impermissible Challenges*

Impermissible challenges are challenges that are made on improper grounds. Because the challenge is impermissible, the challenger liaison does not evaluate the challenge to accept it or reject it. Impermissible challenges are:

6

- Challenges made to something other than a voter's eligibility or an election process;

- Challenges made without a sufficient basis, as explained below; and

- Challenges made for a prohibited reason.

**Election inspectors are not required to record an impermissible challenge in the poll book.** If it is possible to make a note without slowing down the voting or absent voter ballot tabulation process, the election inspector is encouraged to note the content of an impermissible challenge in the poll book, as well as any warning given to the challenger making that impermissible challenge. If the challenger makes multiple impermissible challenges, the election inspector is likewise encouraged to note the general basis of those challenges and the approximate number of challenges, if the election inspector can make that note without slowing down the election process. In all circumstances, however, the election inspector should prioritize the orderly and regular administration of the election process over noting an impermissible challenge.

**Repeated impermissible challenges may result in a challenger's removal from the polling place or absent voter ballot processing facility.**

*Rejected Challenges*

Rejected challenges are challenges which are not impermissible, but which the challenger liaison does not accept. Whether a challenge is permissible but rejected is a context-specific determination that depends on the type of challenge being made. The process for determining whether a challenge to an election process or a voter's eligibility is rejected is set out below in the relevant sections. If a challenge is permissible but rejected, the following information must be included in the poll book:

- The challenger's name;

- The time of the challenge;

- The substance of the challenge; and

- The reason why the challenge was rejected.

*Accepted Challenges*

Accepted challenges are challenges which are permissible and which the challenger liaison deems correct. If a challenge is accepted, the following information must be included in the poll book:

- The challenger's name;

- The time of the challenge;

- The substance of the challenge; and

- The actions taken by the election inspectors in response to the challenge.

\* \* \*

A challenger may make a challenge to a voter's eligibility to cast a ballot only if the challenger has a good reason to believe that the person in question is not a registered voter. There are four reasons that a challenger may challenge a voter's eligibility; **a challenge made for any other reason than those listed below is impermissible.** The four permissible reasons to challenge a voter's eligibility are:

1. The person is not registered to vote;

2. The person is less than 18 years of age;

3. The person is not a United States citizen; or

4. The person has not lived in the city or township in which they are attempting to vote for 30 or more days prior to the election.

The challenger must cite one of the four listed permissible reasons that the challenger believes the person is not a registered voter, and the challenger must **explain the reason the challenger holds that belief.** If the challenger does not cite one of the four permitted reasons to challenge this voter's eligibility, or cannot provide support for the challenge, the challenge is impermissible.

A challenger may challenge a voter's eligibility only by making a challenge to the challenger liaison or the challenger liaison's designee. **The challenger must make the challenge in a discrete manner not intended to embarrass the challenged voter, intimidate other voters, or otherwise**

8

**disrupt the election process.** An election inspector will warn a challenger who violates any of these prohibitions; if a challenger repeatedly violates any of these prohibitions, the challenger may be ejected from the polling place.

*Impermissible Challenge to Voter's Eligibility: Improper Reason for Challenge*

A challenger may not challenge a voter's eligibility for any reason other than the four reasons above. Any challenge made for a reason other than those four reasons is impermissible and should not be considered by the challenger liaison or recorded by the election inspectors. Improper reasons for making a challenge to a voter's eligibility include, but are not limited to, the following:

- the voter's race or ethnic background;

- the voter's sexual orientation or gender identity;

- the voter's physical or mental disability;

- the voter's inability to read, write, or speak English;

- the voter's need for assistance in the voting process;

- the voter's manner of dress;

- the voter's support for or opposition to a candidate, political party, or ballot question;

- the appearance or the challenger's impression of any of the above traits; or

- any other characteristic or appearance of a characteristic that is not relevant to a person's qualification to cast a ballot.

*Impermissible Challenge to Voter's Eligibility: Non-Specific Challenge*

A challenge to a voter's eligibility is impermissible and should not be recorded by the election inspectors if the challenger cannot specify under which of the four permissible reasons the challenger believes the voter to be ineligible to vote, or if the challenger refuses to provide a reason for the challenge to the voter's eligibility.

*Impermissible Challenge to Voter's Eligibility: No Explanation for Challenge*

A challenge to a voter's eligibility is impermissible and should not be recorded by the election inspectors if the challenger cannot provide a reason for their belief that the voter is ineligible to vote. For example, a challenger cannot simply state that they believe a voter to be ineligible because of their age or citizenship status; the challenger must explain why they believe the voter to be underage or why they believe the voted is not a United States citizen. The challenger liaison may deem the reason for the challenger's belief impermissible if the reason provided bears no relation to criteria cited by the challenger, or if the provided reason is obviously inapplicable or incorrect. [The manual, pp 10-13.]

The fourth area of the manual that the Court of Claims found to be invalid was titled "Challengers at Absent Voter Ballot Processing Facilities." In relevant part, the provision provided a restriction that "[n]o electronic devices capable of sending or receiving information, including phones, laptops, tablets, or smartwatches, are permitted in an absent voter ballot processing facility while absent voter ballots are being processed until the close of polls on Election Day." *O'Halloran*, ___ Mich App at ___; amended slip op at 4, 13-14 (discussing the Court of Claims' opinion and order); see also the manual, p 9. Violating this provision could have resulted in ejection from the facility. The manual, p 9.

After finding that these components of the manual were contrary to the Michigan Election Law, the Court of Claims gave defendants a choice among a few options for remedying the issues. See *O'Halloran*, ___ Mich App at ___; amended slip op at 14-15 (affirming the options given by the Court of Claims). The choices were to either (1) rescind the manual in its entirety, or (2) revise the manual in either its then-current version or revise a previous version to comply with the Court of Claims opinion. *Id*. at ___; amended slip op at 14-15 (affirming the options given by the Court of Claims).

Defendants appealed. Before the Court of Appeals opined on the merits, defendants sought leave to appeal in this Court, seeking to bypass the Court of Appeals as well as a stay of the Court of Claims opinion and order pending the conclusion of this appeal.[4] We stayed the Court of Claims opinion and order, and any decision of the Court of Appeals in these cases, "pending the appeal period for the filing of an application for leave to appeal in this Court[.]" *O'Halloran v Secretary of State*, 510 Mich 970, 970 (2022); *DeVisser v Secretary of State*, 510 Mich 994, 994 (2022). The cases then remained with the Court of Appeals, which affirmed. See *O'Halloran*, ___ Mich App at ___; amended slip op at 2, 14-15.

Defendants sought leave to appeal in this Court. In their application, defendants continued to argue for relief from the Court of Appeals' holdings as to the credential form, challenger liaison, permissible challenge, and electronic device instructions. We ordered oral argument on the application, directing the parties to address

> whether: (1) the challenged provisions of the election procedure manual issued by the Secretary of State are consistent with Michigan Election Law, MCL 168.1 *et seq*.; and (2) even if authorized by statute, the Secretary of State was required to promulgate the challenged provisions as formal rules under the [APA]. [*O'Halloran v Secretary of State*, ___ Mich ___, ___; 6 NW3d 397 (2024).]

We now resolve the appeal.

---

[4] Before this Court granted the stay, the Court of Appeals consolidated the two cases. *O'Halloran v Secretary of State*, unpublished order of the Court of Appeals, entered October 31, 2022 (Docket Nos. 363503 and 363505).

11

## II. LEGAL BACKGROUND

### A. STANDARD OF REVIEW

Whether an agency exceeds its scope of authority is a question of law that we review de novo. *In re Reliability Plans of Electric Utilities for 2017–2021*, 505 Mich 97, 118; 949 NW2d 73 (2020), citing *Consumers Power Co v Pub Serv Comm*, 460 Mich 148, 157; 596 NW2d 126 (1999). We also review de novo questions of statutory interpretation. *Woodman v Dep't of Corrections*, 511 Mich 427, 440; 999 NW2d 463 (2023), citing *American Civil Liberties Union of Mich v Calhoun Co Sheriff's Office*, 509 Mich 1, 8; 983 NW2d 300 (2022).

### B. THE MICHIGAN ELECTION LAW

This case now concerns four challenged components of the manual. Both the DeVisser plaintiffs and the O'Halloran plaintiffs allege in their complaints that these components are contrary to the Michigan Election Law. To resolve the issues raised, we must look to the law itself.

The authority given to an agency by statute is a matter of statutory interpretation. *In re Reliability Plans of Electric Utilities for 2017–2021*, 505 Mich at 119. The primary goal of statutory interpretation is to give effect to the legislative intent, which begins by examining the plain language of the statute. *Id*.

Under the Michigan Election Law, "the Secretary of State shall be the chief election officer of the state and shall have supervisory control over local election officials in the performance of their duties under the provisions of this act." MCL 168.21. In performance of their duties, the Legislature has designated several general responsibilities that the Secretary "shall do." MCL 168.31(1). As relevant to this opinion, these mandatory

12

executive duties include: (1) subject to MCL 168.31(2), "issu[ing] instructions and promulgat[ing] rules pursuant to the" APA "for the conduct of elections and registrations in accordance with the laws of this state," MCL 168.31(1)(a); (2) "[a]dvis[ing] and direct[ing] local election officials as to the proper methods of conducting elections," MCL 168.31(1)(b); (3) publishing and furnishing before each state primary and general election "a manual of instructions" that includes "procedures and forms for processing challenges," MCL 168.31(1)(c); (4) "[p]rescrib[ing] and require[ing] uniform forms" that the Secretary "considers advisable for use in the conduct of elections and registrations," MCL 168.31(1)(e); and (5) investigating and reporting "violations of election laws and regulations," MCL 168.31(1)(h). The duties that *must* be fulfilled through APA rulemaking are specified as the promulgation of rules "establishing uniform standards for state and local nominating, recall, and ballot question petition signatures." MCL 168.31(2). Although not unlimited, MCL 168.31(1) grants the Secretary of State a degree of discretion in choosing what process to use to fulfill her remaining duties. A separate requirement mandates that the Secretary of State "shall develop instructions consistent with [the Michigan Election Law] for the conduct of absent voter counting boards or combined absent voter counting boards" that are "binding on the operation of an absent voter counting board or combined absent voter counting board used in an election conducted by a county, city, or township." MCL 168.765a(17).

The Michigan Election Law is also the sole source of legal authority for the appointment of election challengers. The general criteria for being a challenger includes being a "registered elector" of Michigan who is not a "candidate for nomination or election to an office" or an appointed election inspector for the election in which one seeks to be a

13

challenger.  MCL 168.730(2).[5]  "[A] political party or an incorporated organization or organized committee of citizens . . . interested in preserving the purity of elections and in guarding against the abuse of the elective franchise may designate challengers" at an election.  MCL 168.730(1).  "Authority signed by the recognized chairman or presiding officer of the chief managing committee of any organization or committee of citizens [designating the challenger] . . . shall be sufficient evidence of the right of such challengers to be present inside the room where the ballot box is kept . . . ."  MCL 168.732.  The "authority" must include the "name of the challenger to whom it is issued and the number of the precinct to which the challenger has been assigned."  *Id*.  Additionally, MCL 168.731(1) provides a way for "an incorporated organization or organized committee of interested citizens other than political party committees . . . to appoint challengers at the election" by filing with the relevant authority "a statement setting forth the intention of the organization or committee to appoint challengers."  The "statement" is required to "set forth the reasons why the organization or committee claims the right to appoint challengers, with a facsimile of the card to be used," and the statement must be "signed and sworn to by" designated officers of the organization or committee.  *Id*.

The authority of election challengers is addressed in both MCL 168.727 and MCL 168.733.  MCL 168.727(1) provides:

> An election inspector shall challenge an applicant applying for a ballot if the inspector knows or has good reason to suspect that the applicant is not a qualified and registered elector of the precinct, or if a challenge appears in connection with the applicant's name in the registration book.  *A registered*

---

[5] MCL 167.730(2) clarifies that a "candidate for the office of delegate to a county convention may serve as a challenger in a precinct other than the 1 in which he or she is a candidate."

14

*elector of the precinct present in the polling place may challenge the right of anyone attempting to vote if the elector knows or has good reason to suspect that individual is not a registered elector in that precinct.* An election inspector or other qualified challenger may challenge the right of an individual attempting to vote who has previously applied for an absent voter ballot and who on election day is claiming to have never received the absent voter ballot or to have lost or destroyed the absent voter ballot. [MCL 168.727(1) (emphasis added).]

In addition, MCL 168.733(1) provides that election challengers may perform certain tasks:

A challenger may do 1 or more of the following:

(a) Under the scrutiny of an election inspector, inspect without handling the poll books as ballots are issued to electors and the electors' names being entered in the poll book.

(b) Observe the manner in which the duties of the election inspectors are being performed.

(c) Challenge the voting rights of a person who the challenger has good reason to believe is not a registered elector.

(d) Challenge an election procedure that is not being properly performed.

(e) Bring to an election inspector's attention any of the following:

(*i*) Improper handling of a ballot by an elector or election inspector.

(*ii*) A violation of a regulation made by the board of election inspectors pursuant to section 742.

(*iii*) Campaigning being performed by an election inspector or other person in violation of section 744.

(*iv*) A violation of election law or other prescribed election procedure.

(f) Remain during the canvass of votes and until the statement of returns is duly signed and made.

(g) Examine without handling each ballot as it is being counted.

(h) Keep records of votes cast and other election procedures as the challenger desires.

(i) Observe the recording of absent voter ballots on voting machines.

When a challenge is made under MCL 168.727(1), "an election inspector shall immediately," among other things, "[m]ake a written report" that includes all disparities or infractions complained of or believed to have occurred, the name and time of the challenge, specified information about the challenged individual, and other information considered appropriate by the election inspector. MCL 168.727(2)(b). The written report shall be made part of the election record. MCL 168.727(c).

The Michigan Election Law has built-in provisions for challengers and other individuals who violate its terms. For instance, an election challenger at a polling location "shall not make a challenge indiscriminately and without good cause," "shall not handle the poll books while observing election procedures or the ballots during the counting of ballots," and "shall not interfere with or unduly delay the work of the election inspectors." MCL 168.727(3). "An individual who challenges a qualified and registered elector of a voting precinct for the purpose of annoying or delaying voters is guilty of a misdemeanor." *Id*. Also, at a polling location or absent voter ballot processing facility, "[a]ny evidence of drinking of alcoholic beverages or disorderly conduct *is sufficient cause* for the expulsion of a challenger from the polling place or the counting board. The election inspectors and other election officials on duty shall protect a challenger in the discharge of his or her duties." MCL 168.733(3) (emphasis added). At either type of location, threatening or intimidating challengers while performing their duties under MCL 168.733(1) is prohibited, and "[a] challenger shall not threaten or intimidate an elector while the elector is entering the polling place, applying to vote, entering the voting compartment, voting, or leaving the polling place." MCL 168.733(4). The safeguards provided by MCL

16

168.678(3) and (4) are further supported by the legal designation that "[e]ach board of election inspectors shall possess full authority to maintain peace, regularity and order at its polling place, and to enforce obedience to their lawful commands . . . ." MCL 168.678.

## C. FORMAL RULEMAKING AND INTERPRETIVE RULES

Both the DeVisser plaintiffs and the O'Halloran plaintiffs also argue that, even if the challenged provisions of the manual are not contrary to the Michigan Election Law, they amount to formal rules that were adopted without following formal rulemaking procedures. To decide these issues, we must consider whether the challenged components amount to formal administrative rules under Michigan law.

An executive agency's power derives from statute. *Soap & Detergent Ass'n v Natural Resources Comm*, 415 Mich 728, 736; 330 NW2d 346 (1982). Yet an agency has the authority to interpret the statutes it administers and enforces. *Clonlara, Inc v State Bd of Ed*, 442 Mich 230, 240; 501 NW2d 88 (1993). Although an agency's interpretation of a statute is not binding on courts and may not conflict with the Legislature's clearly expressed language, it is entitled to respectful consideration and should not be overturned absent cogent reasons for doing so. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103; 754 NW2d 259 (2008).

The APA outlines a formal process that must be followed for an agency to promulgate a rule that has the force and effect of law. *Clonlara*, 442 Mich at 239.[6] An

---

[6] Although it is not essential to go into the details of the APA's processes because the agency did not enact formal rules here, the procedure is elaborate, time-consuming, and resource-intensive. For example, it requires public hearings, public participation, notice, approval by a joint legislative committee on rulemaking, and passage of time between each

agency's formally promulgated rules are generally applicable and have the force and effect of law, but not all agency actions or statutory interpretations constitute rules. The APA defines "[r]ule" as "an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency . . . ." MCL 24.207. The APA creates several exceptions to the definition of a rule, including "[a] form with instructions, an interpretive statement, a guideline, an informational pamphlet, or other material that in itself does not have the force and effect of law but is merely explanatory." MCL 24.207(h).

When a statute does not require rulemaking for its interpretation, an agency may choose to issue "interpretive rules," which would fall under the MCL 24.207(h) rulemaking exception as policy statements that give guidance but do not have the force and effect of law. *Clonlara*, 442 Mich at 239. " 'An interpretive rule is any rule an agency issues without exercising delegated legislative power to make law through rules.' " *Id*., quoting 2 Davis, Administrative Law (2d ed), § 7:8, p 36.

> "[I]nterpretive rules are, basically, those that interpret and apply the provisions of the statute under which the agency operates. No sanction attaches to the violation of an interpretive rule as such; the sanction attaches to the violation of the statute, which the rule merely interprets. . . . [Interpretive rules] state the interpretation of ambiguous or doubtful statutory language which will be followed by the agency unless and until the statute is otherwise authoritatively interpreted by the courts.

* * *

---

process. See *Detroit Base Coalition for the Human Rights of the Handicapped v Dep't of Social Servs*, 431 Mich 172, 178; 428 NW2d 335 (1988).

18

If the rule represents something more than the agency's opinion as to what the statute requires—if the legislature has delegated a measure of legislative power to the agency, and has provided a statutory sanction for violation of such rules as the agency may adopt—then the rule may properly be described as legislative." [*Clonlara*, 442 Mich at 239 (alteration in *Clonlara*), quoting 1 Cooper, State Administrative Law, pp 174-175.]

As this Court recently reaffirmed, an interpretative statement "in itself lacks the force and effect of law because it is the underlying statute that determines how an entity must act, i.e., that alters the rights or imposes obligations." *Mich Farm Bureau v Dep't of Environment, Great Lakes, & Energy*, ___ Mich ___, ___; ___ NW2d ___ (July 31, 2024) (Docket No. 165166); slip op at 33, citing *Clonlara*, 442 Mich at 245. And it is worth reiterating that "[a]n interpretive statement that goes beyond the scope of the law may be challenged when it is in issue in a judicial proceeding. An interpretation not supported by the enabling act is an invalid interpretation, not a rule." *Clonlara*, 442 Mich at 243.

Without dispute, the components of the manual at issue were not promulgated through the APA. This background of when agencies must promulgate formal rules through the APA is necessary for determining whether defendants are correct that the challenged components of the manual are not formal rules requiring conformity with the APA processes. With this legal background, we now look at each challenged component of the manual, in turn, to determine whether plaintiffs are correct that either the particular component is contrary to the Michigan Election Law or the component was a formal rule requiring promulgation through the APA.

19

III. APPLICATION

A. CHALLENGER CREDENTIAL FORM

Both sets of plaintiffs argue that the manual unlawfully requires the use of a uniform form for challengers to demonstrate that they are credentialed as election challengers. The Court of Appeals affirmed the Court of Claims' holding that the challenger credential form was invalid as conflicting with the Michigan Election Law. *O'Halloran*, ___ Mich App at ___; amended slip op at 10. We disagree. The lower courts concluded that the Michigan Election Law " 'has set forth the exhaustive list of evidence for validating a credential, and if a purported credential includes the three items in MCL 168.732, then that purported credential fully complies . . . .' " *O'Halloran*, ___ Mich App at ___; amended slip op at 9 (approvingly quoting the Court of Claims' conclusion).

MCL 168.732 addresses a challenger's right to be present and provides:

> Authority signed by the recognized chairman or presiding officer of the chief managing committee of any organization or committee of citizens interested in the adoption or defeat of any measure to be voted for or upon at any election, or interested in preserving the purity of elections and in guarding against the abuse of the elective franchise, or of any political party in such county, township, city, ward or village, shall be sufficient evidence of the right of such challengers to be present inside the room where the ballot box is kept, provided the provisions of the preceding sections have been complied with. The authority shall have written or printed thereon the name of the challenger to whom it is issued and the number of the precinct to which the challenger has been assigned.

If all other statutory criteria are met, MCL 168.732 outlines three requirements that every challenger appointed under MCL 168.730 or MCL 168.731 must possess to be credentialed: (1) authority signed by the appropriate individual, as recognized by the statute; (2) the written or printed name of the challenger; and (3) the number of the precinct

20

to which the challenger is assigned. MCL 168.732. Thus, we agree with the lower courts—there are three requirements that every credential must include, and no additional substantive requirements can be imposed. However, we disagree that this statute precludes requiring challengers to submit such evidence on a uniform form.

MCL 168.732 contains an exhaustive list of requirements for the three things that must be included on the "authority" that serves as a credential for election challengers. But the statute is silent about what form the credential may take.[7] On its face, the manual explains that the challenger credential form must contain the statutory requirements and must be included on the uniform form provided by the Secretary of State. The manual, pp 4-5. Nowhere does the manual purport to add any substantive requirements beyond those listed in MCL 168.732. Instead, the Secretary has merely mandated use of a uniform credential form that must include all, but no more than, the statutorily required information. Simply requiring use of a particular form does not alter what "evidence" is "sufficient" to become credentialed and therefore does not conflict with MCL 168.732. The lower courts conflated the required use of a form with a substantive requirement within that form. In so doing, the lower courts ignored the statutory requirement that the Secretary "[p]rescribe and require uniform forms . . . for use in the conduct of elections . . . ." MCL 168.31(1)(e). The phrase "for use in the conduct of elections" is not defined in the Michigan Election

---

[7] MCL 168.730 and MCL 168.731 are also silent. MCL 168.731(1) provides that a nonpolitical party organization must submit a "facsimile of the card to be used" by the appointed challenger. But used in this context, a "facsimile" is merely "an exact copy." *Merriam-Webster's Collegiate Dictionary* (11th ed). Thus, MCL 168.731(1) merely requires submission of an exact copy of the credential card to be used, but it does not prohibit the Secretary from mandating use of a uniform form and does not grant an organization the right to use its own form.

21

Law, but it clearly includes mandating the use of uniform forms that are deemed necessary or helpful to the act, manner, or process of carrying on a primary or general election. Although both sets of plaintiffs challenge the use of a required uniform form, MCL 168.31(1)(e) could not more clearly provide the Secretary the authority to require challengers and their appointing organizations to use a uniform form. Doing so does not conflict with MCL 168.732 and is wholly within the Secretary's authority under MCL 168.31(1)(e).

Nor are we persuaded that this component of the manual amounts to a formal rule requiring promulgation through the APA. Under the APA, a formal rule "does not include" a "form with instructions . . . that in itself does not have the force and effect of law but is merely explanatory." MCL 24.207(h). This is a form that instructs challengers regarding how to submit the required evidence to be credentialed as a challenger. Moreover, this manual provision lacks the "force and effect of law" because, as discussed above, it adds no substantive requirement in order to be credentialed. If mandating the use of a form that an agency is explicitly authorized to create is all that is required to convert something into a rule, then the "form with instructions" exception under MCL 24.207(h) would be nugatory. We decline to accept such an interpretation. Accordingly, it falls squarely within the APA's formal rulemaking exception under MCL 24.207(h).

## B. CHALLENGER LIAISON

Next, we consider plaintiffs' challenges to a challenger liaison. The specific challenges arise from the manual's requirement that "[c]hallengers must not communicate with election inspectors who are not the challenger liaison unless otherwise instructed by

22

the challenger liaison or a member of the clerk's staff." The manual, p 6. The Court of Appeals affirmed the Court of Claims' conclusion that MCL 168.733(1) authorizes a challenger to bring one of several specified matters to the attention of "an election inspector" rather than a "challenger liaison," as the manual requires. *O'Halloran*, ___ Mich App at ___; amended slip op at 11.

In other words, this issue requires us to determine whether a challenger may bring a challenge to "an election inspector" or is entitled to bring an issue to "an[y] election inspector" of their choosing. We hold that the right of a challenger to bring certain issues to the attention of an election inspector under MCL 168.733(1)(e) does not grant a challenger the right to call matters to the attention of any election inspector of their choosing but merely provides an opportunity to call matters to the attention of at least one election inspector. Given that the challenger liaison at a polling place, under the manual's plain terms, is a designated election inspector, this provision is not contrary to the Michigan Election Law as applied to polling places. However, the manual is inconsistent with the Michigan Election Law to the extent it requires a challenger at an absent voter ballot processing facility to raise an issue under MCL 168.733(1)(e) *solely* to a challenger liaison who is *not* an election inspector.

The Court of Appeals conducted its analysis of this issue by focusing solely on MCL 168.733(1)(e) without considering other relevant provisions throughout the Michigan Election Law. MCL 168.727(1) outlines some circumstances in which "an election inspector" or a "registered elector of the precinct present in the polling place" may raise a challenge related to the conduct of an election at a polling place. This section does not explicitly specify to whom a challenger may speak, but rather merely provides the right to

23

challenge. Given that MCL 168.727(2) requires an "election inspector" to record challenges brought under MCL 168.727(1), the provision contemplates that an election inspector will eventually receive any such challenge. But nothing in MCL 168.727 explicitly provides a challenger the right to speak directly to *any* election inspector, let alone the right to speak to *all* election inspectors.

MCL 168.733 describes a challenger's general rights and duties at both polling locations and absent voter ballot processing facilities. See MCL 168.733(2). Comparing these two statutes—MCL 168.733 and MCL 168.727—only MCL 168.733(1)(e) expresses the specific right to "[b]ring to an election inspector's attention" certain issues, none of which is characterized as "challenges."[8] That language does not accompany any "challenges" related to, for example, inspecting the names entered in the poll book, MCL 168.733(1)(a); observing the manner in which election inspectors are performing their duties, MCL 168.733(1)(b); challenging a person's voting rights if there is good reason to believe they are not a registered elector, MCL 168.733(1)(c); or challenging an election procedure as not being properly followed, MCL 168.733(1)(d). MCL 168.727 and MCL 168.733(1)(a) to (d) and (f) to (i) are silent regarding to whom "challenges" may be brought. The lower courts only considered the specific language of MCL 168.733(1)(e) and failed to recognize that the language "bring to an election inspector's attention" is only

---

[8] These issues include the "[i]mproper handling of a ballot by an elector or election inspector," "[a] violation of a regulation made by the board of election inspectors pursuant to [MCL 168.742]," "[c]ampaigning being performed by an election inspector or other person in violation of [MCL 168.744]," and "[a] violation of election law or other prescribed election procedure." MCL 168.733(1)(e)(*i*) to (*iv*).

included in reference to a subset of a challenger's authority and not to any "challenges" explicitly identified as such in MCL 168.727 or MCL 168.733.

One of the Secretary's general responsibilities requires her to publish and furnish a manual that includes procedures for processing challenges, MCL 168.31(1)(c), which certainly can encompass who among the election workers at a polling place or absent voter ballot processing facility may process challenges. While MCL 168.727 and MCL 168.733 create express rights for challengers to raise challenges, these statutory provisions are silent regarding to whom such challenges must be brought. Accordingly, nothing in the Michigan Election Law precludes the Secretary from providing instructions regarding to whom challengers must address the "challenges" listed in those statutes.

The decision to specify the proper method for processing challenges was within the Secretary's authority under the Michigan Election Law. See MCL 168.31(1)(a) and (c). As to the subset of issues that can be brought to the attention of an election inspector under MCL 168.733(1)(e), we disagree with the Court of Appeals' conclusion that "the statute explicitly authorizes challengers to communicate with any election inspector." *O'Halloran*, ___ Mich App at ___; amended slip op at 11. MCL 168.733(1)(e) states that challenges may be brought to "an" election inspector—not "any" election inspector, which the Court of Appeals claimed was the explicit language of the statute. The word "an" has multiple meanings. See *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 368-369; 917 NW2d 603 (2018) (explaining that "[w]hether [the indefinite article] 'a' should be read as referring to a discrete item or as referring to one of many potential items depends on the context in which it is used. But,

25

while the article may be susceptible to multiple meanings when read in isolation, we must select the meaning that makes the most sense when the statute is read as a whole").

Given the statute's silence regarding who will receive "challenges" under MCL 168.727 and MCL 168.733, and the Secretary's explicit authority to publish and furnish procedures for processing challenges, MCL 168.31(1)(c), we decline to read the phrase "an election inspector[]" in MCL 168.733(1)(e) as providing challengers the *right* to raise any issue in that subsection to *any* election inspector. In other words, we do not read "an election inspector[]" in MCL 168.733(1)(e) as providing challengers the greater right to bring to *any* election inspector only the subset of issues that can be raised under MCL 168.733(1)(e). Rather, we read MCL 168.31(1)(c), MCL 168.727, and MCL 168.733 harmoniously to provide challengers the authority to make challenges or raise other issues regarding the proper conduct of elections, but not as providing them the right to raise such issues to *any* and *all* election inspectors serving at a particular location.

As applied to polling places, the manual does not prohibit challengers from bringing matters to the attention of an election inspector; it merely prescribes a method for ensuring that the challenges are uniformly received, processed, applied, and documented by designating the election inspector who will receive them. Examining the phrase within the context of the Michigan Election Law, we agree with defendants that it was reasonable and consistent with MCL 168.733(1)(e) for the manual to instruct that the right to bring challenges to "an" election inspector at a polling place meant raising those challenges to a designated election inspector known as a challenger liaison rather than to "any election inspector of the challenger's choice."

However, the manual appears to state that the default challenger liaison at an absent voter ballot processing facility is a member of the precinct's clerk's staff who would not be an election inspector, and the Secretary admits in her briefing that challenger liaisons at absent voter ballot processing facilities are not election inspectors. See the manual, p 5. As already noted, the statute is silent regarding who is to receive any "challenges" explicitly identified as such in MCL 168.727 and MCL 168.733, so there is nothing improper about requiring challengers to bring any "challenges" in those sections to a challenger liaison who is not also an election inspector. However, MCL 168.733(1)(e) provides challengers the right to bring the subset of issues listed in that section to at least one election inspector. Accordingly, the manual is inconsistent with the Michigan Election Law to the extent it prohibits challengers from raising issues listed in MCL 168.733(1)(e) to at least one election inspector who is serving at an absent voter ballot processing facility.

Further, like the credential form, except as already noted, the challenger-liaison provisions of the manual are consistent with the Michigan Election Law and do not require formal rulemaking because they fit squarely within an exception to the APA's rulemaking requirement under MCL 24.207(h). In relevant part, MCL 24.207(h) exempts from rulemaking an "interpretative statement" that "in itself does not have the force and effect of law but is merely explanatory." These manual provisions fit this rulemaking exemption because they fit within correct interpretations of Michigan law as permitting the funneling of all challenges to one particular election inspector identified as a "challenger liaison."

Moreover, these interpretive rules do not have "the force and effect of law" as applied to challengers.[9] While the limitation on speaking with any election inspector other than one identified as the challenger liaison is stated in mandatory terms, the manual does not instruct that inspectors are *required* to expel challengers who violate that prohibition. Rather, an election inspector is to warn the challenger after a first violation, and if that challenger *repeatedly violates* the prohibition despite the warning, the election inspector *may*, in their discretion, eject that challenger. MCL 168.678 already provides election inspectors with the "full authority to maintain peace, regularity and order at its polling place, and to enforce obedience to their lawful commands during any primary or election and during the canvass of the votes after the poll is closed." This authority is broad enough to provide election inspectors the discretionary authority to eject challengers under the circumstances provided in the manual if a challenger's repeated refusal to follow the election inspector's instructions becomes problematic.[10] Accordingly, because the manual's permissible provisions simply provide interpretive statements regarding how

---

[9] We agree with the Court of Appeals that the Secretary has the authority "to issue binding non-rule instructions on election workers," *O'Halloran*, ___ Mich App at ___; amended slip op at 14, and plaintiffs do not contest that conclusion. See also MCL 168.765a(17). Accordingly, the question is whether this manual provision has the "force and effect of law" as applied to challengers.

[10] We disagree with plaintiffs and the Court of Appeals that MCL 168.733(3) provides the exclusive basis for expulsion of a challenger. Notably, MCL 168.733(3) provides only that "[a]ny evidence of drinking of alcoholic beverages or disorderly conduct is *sufficient cause* for the expulsion of a challenger from the polling place or the counting board"; it does not state that these are necessary or exclusive preconditions for expulsion. And while MCL 168.732 provides qualified challengers the "right . . . to be present" in a polling place, we conclude this right is conditional on the authority of election inspectors to maintain peace and enforce lawful commands under MCL 168.678.

28

election inspectors should exercise their pre-existing discretionary authority under MCL 168.678 and MCL 168.733(3) and does not impose any new substantive requirement or limitation on challengers, it lacks the "force and effect of law." See MCL 24.207(h). Thus, these components are permissible and need not be promulgated as a rule through the APA.

## C. PERMISSIBLE AND IMPERMISSIBLE CHALLENGES

We next consider plaintiffs' argument that the Secretary is without authority to categorize challenges as permissible or impermissible and that only permissible challenges need to be recorded. As previously discussed, the Secretary has the duty to "furnish . . . a manual of instructions that includes . . . procedures and forms for processing challenges[.]" MCL 168.31(1)(c). Instructions to election officials regarding what challenges are authorized under law and when to record challenges fits within this authority if those instructions are consistent with the Michigan Election Law.

We conclude that the Secretary has the authority to include in the manual most of the manual provisions regarding permissible and impermissible challenges without formal rulemaking. This nonexhaustive authority includes (1) a list of permissible and impermissible reasons for a voter-eligibility challenge that accurately reflects the statutory requirements for eligibility to vote[11] and (2) instructions that challenger liaisons need not record a voter-eligibility challenge if the challenger does not provide a permissible reason

---

[11] While the mandatory recording requirement applies to any challenge raised under MCL 168.727(1), the manual only distinguishes between "permissible" and "impermissible" challenges regarding challenges that one is not a registered elector of the precinct.

for the challenge or some explanation for the basis of their challenge.[12] However, the manual improperly states that "[t]he challenger liaison may deem the reason for the challenger's belief impermissible if the reason provided bears no relation to criteria cited by the challenger, or if the provided reason is obviously inapplicable or incorrect." The manual, p 13.

We hold, first, that there is no conflict between the Michigan Election Law and the manual in terms of separating challenges into categories. Here, the manual creates distinct categories for challenges that are "permissible" and "impermissible." It is true that these words are not present in the statute; however, the words are just organizational terms used by the manual to explain statutory requirements. This is consistent with an agency document intended to interpret and explain the requirements of the Michigan Election Law without restating those statutes verbatim. See MCL 168.31(1)(a) and (c); MCL 24.207(h); *Clonlara*, 442 Mich at 239-243.

Recall that there are four "permissible" voter-eligibility challenge types listed in the manual: (1) the person is not registered to vote, (2) the person is less than 18 years of age, (3) the person is not a United States citizen, and (4) the person has not lived in the voting district for at least 30 days before the election. The manual, pp 11-12. These four types of challenges map directly onto the types of challenges listed in MCL 168.727(1) (explaining that "[a] registered elector of the precinct present in the polling place may challenge the

---

[12] This opinion does not suggest that the Secretary may expand the list of impermissible challenges to include factors not provided for by statute. Rather, this opinion holds that as long as the phrase "impermissible challenges" merely provides guidance as to the types of challenges beyond the scope of those delineated in the statute, it presents mere agency guidance, which need not be promulgated formally through the APA.

right of anyone attempting to vote if the elector knows or has good reason to suspect that individual is not a registered elector in the precinct") and in MCL 168.733(1)(c) (stating that a challenger may "[c]hallenge the voting rights of a person who the challenger has good reason to believe is not a registered elector"). Various provisions of the Michigan Election Law support that these are the requirements for qualified and registered electors. An individual must be registered to vote and a citizen of the United States. MCL 168.492; MCL 168.523. Further, to be registered, the person must be at least 18 years old on the date of an election. MCL 168.492; MCL 168.495(g). Finally, a registered voter must demonstrate that the applicant has established residence in the voting district at least 30 days before the election in which they would like to vote. MCL 168.492; MCL 168.495(i). These are the simplest explanations possible for what would constitute a "qualified and registered elector." MCL 168.727(1); MCL 168.733(1)(c). Thus, attaching the label "permissible" challenge is well within the Secretary's authority under MCL 168.31(1)(a) and (c).[13]

---

[13] Justice ZAHRA's dissent attempts to counter this conclusion with the assertion that

> under the Michigan election law an elector or challenger is vested by statute with authority to bring a challenge that does not squarely fall within the discrete parameters labeled "permissible" challenges but may still provide a basis that implicates a voter's eligibility. There are myriad challenges that may or may not be, as the majority states, within "the scope of a challenge.". For instance, a challenger may believe a voter had already voted in another precinct. *Post* at 24-25.

We are not persuaded. The sole example provided by Justice ZAHRA would fall within the scope of a challenge premised on someone not being a registered elector within the precinct. The period of residency within the precinct is inherent in the definition of "qualified elector," and "residence" is a requirement for voting under the Michigan Election Law. See MCL 168.10 (defining "qualified elector"); MCL 168.11 (defining

Given that the manual correctly identifies what qualifies as a statutorily permissible challenge, it is reasonable of the Secretary to label all other challenges as "impermissible challenges." The nonexhaustive list of impermissible challenges merely provides examples of the types of challenges that would fall outside the scope of a "permissible" challenge. Identifying such improper bases by using the term "impermissible challenge" is not contrary to the Michigan Election Law simply because the Michigan Election Law does not use those precise terms.

---

"residence"); MCL 168.727(1) (stating that an election inspector must "challenge an applicant applying for a ballot if the inspector knows or has good reason to suspect that the applicant is not a qualified and registered elector in the precinct" and that a registered elector of the precinct "present in the polling place may challenge the right of anyone attempting to vote if the elector knows or has good reason to suspect that individual is not a registered elector in that precinct"); MCL 168.491 ("The inspectors of election at an election, primary election, or special election in this state shall not receive the vote of an individual whose name is not on the voter registration list generated from the qualified voter file for the precinct in which he or she offers to vote unless the individual meets the requirements of [MCL 168.523a], or the individual registered to vote in person at the city or township clerk's office in the city or township in which he or she resides during the 14 days before the day of an election or on the day of an election and the individual presents a voter registration receipt to the inspectors of election."); MCL 168.492 ("Each individual who has the following qualifications of an elector is entitled to register as an elector in the township or city in which he or she resides. The individual must be a citizen of the United States; not less than 17-$\frac{1}{2}$ years of age; a resident of this state; and a resident of the township or city."). The Michigan Election Law also requires registered electors to provide identifying information (or sign an affidavit if they do not have their identification) before being issued a ballot at a polling location, which can then be compared against the electronic poll book or qualified voter file by an election worker at the polling location. See MCL 168.523 (describing the process for verifying an elector's identity); MCL 168.509q (describing the information that must be included in a qualified voter file). MCL 168.668b (describing the requirements for cities and townships to use approved electronic poll book software that is derived from the qualified voter file). A person who somehow manages to double vote is subject to felony prosecution under state and federal law. See MCL 168.932a; 52 USC 10307(e).

Moreover, we conclude that the manual properly instructs election inspectors that they may decline to record a challenge if a challenger fails to provide a permissible factual basis for a challenge or if the challenger fails to provide an explanation as to the factual basis for their challenge. The Michigan Election Law states that "[u]pon a challenge being made *under subsection (1)*, an election inspector *shall immediately*" take certain actions, including "[m]ake a written report" that includes specific listed information. MCL 168.727(2)(b) (emphasis added). That report must be made a part of the election record. MCL 168.727(2)(c). Notably, this mandatory reporting requirement applies only to challenges "under [MCL 168.727(1)]," MCL 168.727(2)(b), and not to any challenge that may be raised under MCL 168.733.[14] Given the limited scope of the mandatory recording requirement, an election inspector must have implicit authority to determine whether a challenge falls within the scope of challenges that must be recorded. Otherwise, the "under [MCL 168.727(1)]" limitation would be rendered superfluous.

As a reminder, the sentence of MCL 168.727(1) that is relevant to voter-eligibility challenges provides, "A registered elector of the precinct present in the polling place may

---

[14] For this reason, the lower courts erred by holding broadly that MCL 168.727(2) requires reporting of *all* challenges brought under MCL 168.733(1)(c). See *O'Halloran*, ___ Mich App at ___; amended slip op at 12-13. There is admittedly significant overlap between a voter-eligibility challenge under MCL 168.727(1) and challenges under MCL 168.733(1)(c) such that any challenge under the latter will often also be under the former and therefore subject to mandatory reporting. Thus, as a matter of policy, it may be preferable to report all challenges brought under either subsection. But there are also circumstances in which a voting-rights challenge under MCL 168.733(1)(c) will not fall within the scope of MCL 168.727(1), and the statute does not *require* mandatory reporting for such challenges. For example, MCL 168.727(1) applies to a "registered elector of the precinct present in the polling place," whereas MCL 168.733(1)(c) applies to challenges from a "challenger" at both a polling place *and* a counting board, regardless of whether the challenger is also a "registered elector of the precinct."

challenge the right of anyone attempting to vote if the elector *knows or has good reason to suspect* that individual is *not a registered elector in that precinct*." (Emphasis added.) As discussed, the manual's list of "permissible" and "impermissible" reasons for a voter-eligibility challenge tracks the statutory requirements for being a "registered elector." Because an election inspector has to determine whether a challenge falls within Subsection (1), i.e., whether it involves a challenge that an "individual is not a registered elector in that precinct," to determine whether the mandatory reporting obligation is triggered, we conclude that there is nothing improper about the manual instructing election officials that they need not record a challenge unless the challenger articulates a permissible factual basis for that challenge.

Defendants argue that the instructions not to record a challenge if a challenger "cannot provide a reason for their belief that the voter is ineligible to vote," or "if the reason provided bears no relation to criteria cited by the challenger, or if the provided reason is obviously inapplicable or incorrect," the manual, p 13, reflect the "knows or has good reason to suspect" requirement of MCL 168.727(1). In other words, because the reporting requirement only applies to a challenge under MCL 168.727(1), and MCL 168.727(1) contains the "knows or has good reason to suspect" requirement, an election inspector must first assess whether the challenger "knows or has good reason to suspect" before recording the challenge. We agree with defendants that it is permissible to instruct election inspectors to decline to record "if the challenger cannot provide a reason for their belief that the voter is ineligible to vote," the manual, p 13, but conclude that an election inspector cannot decline to record on the basis that they believe the explanation provided is lacking or insufficient.

34

To explain why, it is necessary to turn back to MCL 168.727(2). MCL 168.727(2) requires that the election inspector "shall immediately" "[m]ake a written report" "[u]pon a challenge being made under [MCL 168.727(1)]." MCL 168.727(2)(b). The temporal immediacy requirement is activated when the challenge is made, not when the challenge is determined to be valid. Such an immediacy requirement would be undermined by requiring an election inspector to assess the validity of a challenge before recording it. Moreover, this written report must include, among other things, "[a]ll election disparities or infractions *complained of or believed to have occurred*." MCL 168.727(2)(b)(*i*) (emphasis added). This further indicates that an election inspector is not to determine the validity of a challenge as a precondition to recording, but rather must record any applicable challenges "complained of or believed to have occurred." *Id*. In sum, while election inspectors have implicit authority to determine whether a challenge is one under MCL 168.727(1) such that they are required to report it, they cannot decline to report a challenge on the basis of their personal assessment of the validity or merit of the challenge.

As applied to these manual provisions, we conclude that most of them properly instruct election inspectors regarding steps to ensure that challenges fall within the scope of the mandatory reporting requirement. Requiring a challenger to articulate a permissible factual basis for a challenge and provide *some* explanation regarding why the challenger holds that belief are reasonably related to ensuring it is a type of challenge that must be recorded (one related to voter eligibility) and that the person "knows or has good reason to suspect" one is not a registered elector, without requiring the election inspector to assess the validity of the challenge before determining whether to record it. However, the manual improperly instructs election inspectors that they "may deem the reason for the challenger's

35

belief impermissible [and therefore decline to record the challenge] if the reason provided bears no relation to criteria cited by the challenger, or if the provided reason is obviously inapplicable or incorrect." The manual, p 13. This provision goes beyond instructing election inspectors to ensure that a challenge is the kind that must be recorded and instead requires them to assess the validity of a challenge as a precondition to recording it, which conflicts with the Michigan Election Law. It follows that to the extent the manual assigns the label "impermissible," and thus not subject to a recording requirement as a "challenge made without a sufficient basis" under MCL 168.727(1), this provision must be limited to a challenger's failure to provide a prima facie factual basis for a challenge and not an election inspector's assessment of the validity or merits of a challenge.

For the reasons discussed in Part III(C) of this opinion, we conclude that the manual provisions that do not conflict with the Michigan Election Law fall within the exemption to rulemaking under MCL 24.207(h). The categories of challenges labeled as impermissible in the manual provide guidance as to legally invalid reasons to challenges by explaining what is prohibited by the Michigan Election Law or the state or federal Constitutions. See *Clonlara*, 442 Mich at 245 (stating that an interpretive rule does not have the force of law when an agency "must show violation of the statute, not violation of an interpretive rule," to enforce the requirement at issue). Like the challenger-liaison provisions discussed in Part III(B), the permissible provisions here are interpretive statements regarding the Michigan Election Law that lack the force and effect of law as applied to challengers; the manual does not mandate expulsion for any violation of these provisions but rather merely reflects the pre-existing discretionary authority of election

36

inspectors to maintain peace and ensure compliance with lawful orders. See MCL 168.678; MCL 168.733(3).

## D. PROHIBITION ON ELECTRONIC DEVICES

As already discussed, the 2022 election manual provided, "No electronic devices capable of sending or receiving information, including phones, laptops, tablets, or smartwatches, are permitted in an absent voter ballot processing facility while absent voter ballots are being processed until the close of polls on Election Day." The manual, p 9; see also *O'Halloran*, ___ Mich App at ___; amended slip op at 4, 13-14. Although this challenge was appealed in this Court and remained a live controversy at the time of the Court of Appeals decision, we now consider the issue to be moot.

A moot issue "is one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy." *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 580; 957 NW2d 731 (2020) (quotation marks and citation omitted), quoting *Anway v Grand Rapids R Co*, 211 Mich 592, 610; 179 NW 350 (1920). Since the complaint has been filed, the Legislature has amended MCL 168.765a to effectively permit the possession and limited use of electronic devices in absent voter ballot counting facilities.[15] Prior to this amendment,

---

[15] Effective February 13, 2024, the Legislature amended MCL 168.765a to add Subsection 18, which provides as follows:

> Except as otherwise provided in this subsection, an individual shall not photograph, or audio or video record, within an absent voter counting

37

MCL 168.765a neither provided a right to possess electronic devices in such facilities nor explicitly prohibited the possession of electronic devices.[16]  In response to that amendment, the Secretary removed the complete prohibition on electronic devices, and these challenged provisions are not contained in the 2024 version of the election manual.  Thus, while the provisions were in the manual, there remains no legal effect that a decision from this Court can give to this issue because of intervening changes of statutory law and responsive actions by the Secretary.

We customarily vacate lower-court judgments on moot issues.  *League of Women Voters*, 506 Mich at 588-589.  Once we determine that an issue is moot, we must weigh the conditions and circumstances of the particular issue.  *Id*. at 589.  Here, the conditions that rendered the issue moot were beyond the control of any party to the lawsuit; it was a later-

---

place.  A county, city, or township clerk, or an assistant of that clerk, shall expel an individual from the absent voter counting place if that individual violates this subsection.  This subsection does not apply to any of the following:

(a) An individual who photographs, or audio or video records, posted election results within an absent voter counting place.

(b) A county, city, or township clerk, or an employee, assistant, or consultant of that clerk, if the photographing, or audio or video recording, is done in the performance of that individual's official duties.

(c) If authorized by an individual in charge of an absent voter counting place, the news media that take wide-angled photographs or video from a distance that does not disclose the face of any marked ballot.

[16] Former MCL 168.765a included provisions that (1) limited the communication of information regarding the process of tallying votes, see MCL 168.765a(9) and (10), as amended by 2020 PA 177, and (2) required challengers to take an oath not to photograph or audio/video record at the counting place, MCL 168.765a(9), as amended by 2020 PA 177.

in-time legislative amendment that negated any legal effect a judicial decision may have. And we see no other equitable considerations that weigh against our general practice of vacating lower-court judgments on moot issues. In light of this determination, we vacate the portion of the Court of Appeals and Court of Claims opinions addressing the manual's prohibition on electronic devices in these facilities.

## IV. CONCLUSION

Plaintiffs raised several challenges to various components of the manual. The Court of Claims invalidated five components. Defendants appealed four, which the Court of Appeals affirmed and are now at issue in this Court. We vacate the portion of the lower-court opinions discussing the manual's bar on electronic devices within absent voter ballot processing facilities as rendered moot by statutory amendments. With regard to the remaining three challenged components, we hold that these provisions are lawful except to the extent that they (1) require a challenger at an absent voter ballot processing facility to raise an issue listed in MCL 168.733(1)(e) to a challenger liaison who is not also an election inspector at that facility and (2) provide that "[t]he challenger liaison may deem the reason for the challenger's belief impermissible [and therefore decline to record the challenge] if the reason provided bears no relation to criteria cited by the challenger, or if the provided reason is obviously inapplicable or incorrect."

Kyra H. Bolden
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch

39

STATE OF MICHIGAN

SUPREME COURT

PHILIP M. O'HALLORAN, M.D.,
BRADEN GIACOBAZZI, ROBERT
CUSHMAN, PENNY CRIDER, and
KENNETH CRIDER,

      Plaintiffs-Appellees,

v                                               No. 166424

SECRETARY OF STATE and DIRECTOR
OF THE BUREAU OF ELECTIONS,

      Defendants-Appellants.

_____

RICHARD DEVISSER, MICHIGAN
REPUBLICAN PARTY, and
REPUBLICAN NATIONAL COMMITTEE,

      Plaintiffs-Appellees,

v                                               No. 166425

SECRETARY OF STATE and DIRECTOR
OF THE BUREAU OF ELECTIONS,

      Defendants-Appellants.

_____

CLEMENT, C.J. (*concurring in part and dissenting in part*).

I respectfully dissent and join Justice ZAHRA's separate opinion to the extent that it concludes that the challenged provisions from the Secretary of State's 2022 election manual are invalid because they conflict with the Michigan Election Law, MCL 168.1 *et seq*. See *Chrisdiana v Dep't of Community Health*, 278 Mich App 685, 689; 754 NW2d 533 (2008).

Specifically, I agree with Justice ZAHRA that (1) the manual's requirement of a uniform challenger-credential form conflicts with the provision in MCL 168.732 that possessing a valid, signed authority is "sufficient evidence of the right of such challengers to be present inside the room where the ballot box is kept"; (2) the manual's establishment of a single challenger liaison to whom every challenger must direct their challenges conflicts with the direction in MCL 168.733(1)(e) that a challenger may raise specified issues with "*an* election inspector[]"[1] and is also inconsistent with the goals of party parity expressed elsewhere in the Michigan Election Law, see MCL 168.674(2); (3) the manual's direction that election inspectors record only what the manual identifies as permissible challenges conflicts with MCL 168.727(2)(b), which directs an election inspector to immediately record any challenge made under MCL 168.727(1); and (4) the manual's provision that election challengers may be removed for repeated impermissible challenges conflicts with a challenger's right to be present, MCL 168.732 (unless that conduct rises to the level of disorderly conduct, MCL 168.733(3)).[2] Because the conflicts between the manual's provisions and the Michigan Election Law are sufficient to render the provisions invalid, I do not join Justice ZAHRA's discussion whether the provisions at issue have the force and effect of law.

Elizabeth T. Clement

---

[1] Emphasis added.

[2] Like Justice ZAHRA, I also agree with the majority that plaintiffs' challenge to the manual's provisions regarding the possession of electronic devices in an absent-voter-ballot-processing facility while absent-voter ballots are being processed until the close of polls on Election Day is moot. After the present litigation began, the Legislature amended MCL 168.765a to explicitly allow photography and videorecording under certain circumstances. The Secretary of State amended the manual in accordance with this change and, in so doing, removed the challenged electronic-device prohibition.

# STATE OF MICHIGAN

## SUPREME COURT

PHILIP M. O'HALLORAN, M.D.,
BRADEN GIACOBAZZI, ROBERT
CUSHMAN, PENNY CRIDER, and
KENNETH CRIDER,

Plaintiffs-Appellees,

v                                                    No. 166424

SECRETARY OF STATE and DIRECTOR
OF THE BUREAU OF ELECTIONS,

Defendants-Appellants.

_____

RICHARD DEVISSER, MICHIGAN
REPUBLICAN PARTY, and
REPUBLICAN NATIONAL COMMITTEE,

Plaintiffs-Appellees,

v                                                    No. 166425

SECRETARY OF STATE and DIRECTOR
OF THE BUREAU OF ELECTIONS,

Defendants-Appellants.

_____

ZAHRA, J. (*concurring in part and dissenting in part*).

## I. INTRODUCTION

For more than 20 years, the Secretary of State has issued and revised an election-procedure manual pursuant to MCL 168.31(c), which must "include[] specific instructions on assisting voters in casting their ballots, directions on the location of voting stations in

polling places, procedures and forms for processing challenges, and procedures on prohibiting campaigning in the polling places as prescribed in this act." The content of the "manual," titled "The Appointment, Rights, and Duties of Election Challengers and Poll Watchers," had never been challenged.

Then, in May 2022, the Secretary of State issued a revision of the manual. The manual had last been revised in October 2020 and was 12 pages long.[1] The revisions to the manual primarily introduced substantial provisions relating to election challengers, accounting for the current 24-page manual in dispute.[2] Challengers comprise persons appointed by the local heads of the majority political parties or the heads of an incorporated organization or organized committee of interested citizens other than political-party committees.[3] Once credentialed, challengers have the statutory right to bring to an election inspector's attention the improper handling of a ballot by an elector or election inspector, violations of a regulation made by the board of election inspectors, campaigning being performed by an election inspector or other person, and more generally, a violation of election law or other prescribed election procedure.[4]

---

[1] See Michigan Bureau of Elections, *The Appointment, Rights and Duties of Election Challengers and Poll Watchers* (September 2020), available at <https://mielections.csod.com/clientimg/mielections/MaterialSource/f82645e1-1ee1-461c-ac50-60cb3584f345_9_23_20_Challenger_Booklet.pdf> (accessed August 8, 2024) [https://perma.cc/59E7-CPVS].

[2] See Michigan Bureau of Elections, *The Appointment, Rights, and Duties of Election Challengers and Poll Watchers* (May 2022), attached as Exhibit C to the Secretary of State's February 24, 2023 Appellate Brief in the Court of Appeals.

[3] MCL 168.730(1); MCL 168.731(1).

[4] MCL 168.733(e).

Relevant to these consolidated cases, the manual was revised to require that election challengers present their credentials on a form provided by the Secretary of State, to require that all challenges be presented to a single challenger liaison, and to provide this single challenger liaison discretion to disregard challenges declared impermissible by the manual.

Two groups of plaintiffs filed separate lawsuits in the Court of Claims in September 2022, challenging various provisions in the manual. Plaintiffs included election challengers for the November 2022 general election, two candidates for the Michigan Legislature, the Michigan Republican Party, and the Republican National Committee. Plaintiffs alleged that various provisions of the manual violate the Michigan Election Law, MCL 168.1 *et seq.*, and that the manual was published without the notice-and-comment requirements outlined in the Administrative Procedures Act (APA), MCL 24.201 *et seq.* The Court of Claims granted plaintiffs relief regarding the above-mentioned revisions in the 2022 manual.

Defendants filed applications for leave to appeal in the Court of Appeals as well as bypass applications for leave to appeal in this Court. On November 3, 2022, in lieu of granting leave to appeal, a majority of the Court stayed the effect of the opinion and order of the Court of Claims and any decision of the Court of Appeals, but otherwise declined to review the cases before review by the Court of Appeals.[5] On October 19, 2023, the Court

---

[5] *O'Halloran v Secretary of State*, 510 Mich 970 (2022); *DeVisser v Secretary of State*, 510 Mich 994 (2022). The majority's decision to grant the motion to stay was itself extraordinary because not only was the motion not even properly before the Court, it was decided without mention of any applicable legal standard or reasoning to support its decision to stay the case. See *O'Halloran*, 510 Mich at 984-986 (VIVIANO, J., dissenting); *DeVisser*, 510 Mich at 1008-1010 (VIVIANO, J., dissenting).

of Appeals affirmed the Court of Claims in a published opinion.[6] Notwithstanding that both the Court of Claims and the Court of Appeals found that the revised manual issued by the Secretary of State was in violation of the Michigan Election Law, a majority of this Court continued the stay of the lower-court judgments and ordered expedited oral argument on the application to address "whether (1) the challenged provisions of the election procedure manual issued by the Secretary of State are consistent with Michigan Election Law . . . ; and (2) even if authorized by statute, the Secretary of State was required to promulgate the challenged provisions as formal rules under the [APA]."[7]

To date, the Secretary of State has not sought to promulgate the 2022 manual revisions as a formal administrative rule under the APA. Rather, the Secretary insists that the manual is not a rule that requires public discussion because it is simply an interpretive statement that does not have the force and effect of law but is merely explanatory. The Secretary's position, although curiously sanctioned by a majority of this Court, is difficult to comprehend. If the manual revisions are merely explanatory, challengers who possess a credential meeting the statutory requirements of MCL 168.732[8] would not be turned away

---

[6] *O'Halloran v Secretary of State*, ___ Mich App ___; ___ NW3d ___ (October 19, 2023) (Docket Nos. 363503 and 363505).

[7] *O'Halloran v Secretary of State*, ___ Mich ___; 6 NW3d 397, 398 (2024).

[8] As noted in the majority opinion, "MCL 168.732 outlines three requirements that every challenger appointed under MCL 168.730 or MCL 168.731 must possess to be credentialed: (1) authority signed by the appropriate individual, as recognized by the statute; (2) the written or printed name of the challenger; and (3) the number of the precinct to which the challenger is assigned."

4

by a clerk when they arrive at their assigned precinct.[9]  After all, MCL 168.732 plainly states that possessing valid, signed authority, alone, "shall be sufficient evidence of the right of such challengers to be present inside the room where the ballot box is kept . . . ." If the manual revisions are merely explanatory, as argued by the Secretary and found by a majority of this Court, statutorily credentialed challengers would not be subject to expulsion by presenting a challenge to an election inspector as opposed to the designated challenger liaison.

The manual revisions, in addition to having the force of law, are inconsistent with the existing Michigan Election Law.  MCL 168.733(1)(e) plainly states that an election challenger may "[b]ring to *an election inspector's* attention" certain improprieties in the conduct of elections.[10]  The statute does not limit the challenger's ability to assert such improprieties to the person designated as the challenger liaison.  That the Secretary's new rules are inconsistent with MCL 168.733(1)(e) is best demonstrated by the fact that, under the revised manual, the challenger liaisons at Absent Voter Ballot Processing Facilities (AVBPFs) are members of the local clerk's staff, not election inspectors.[11]  Given that the statute expressly permits the challengers to communicate with an election inspector, the new rule clearly conflicts with the Michigan Election Law.

---

[9] Defendants do not refute that election officials in 2022 failed to honor a challenger's presentation of credentials in full compliance with the statutory requirements under MCL 168.732 simply because the credential was not on the Secretary's sanctioned form.  This is strong evidence that the Secretary's new requirement violates the clear language of the statute.

[10] Emphasis added.

[11] *The Appointment, Rights, and Duties of Election Challengers and Poll Watchers* (May 2022), p 5.

5

And, finally, if the manual revisions are merely explanatory, as decreed by this Court, challenges asserted by a credentialed election challenger would be recorded as expressly required by statute and not subject to the arbitrary whim of the newly designated challenger liaison who is vested by the Secretary's new rules with authority to deem a challenge "impermissible." The Secretary's revisions to the manual are, in fact, "rules" that must be followed—and followed without a trace of public discussion, accountability, or transparency.

Even more concerning, these de facto rules conflict with statutory law and restrict the statutory rights of all challengers and, to some extent, voters themselves. These consolidated cases arise within the context of a statutory framework that aspires to establish a bipartisan or multipartisan balance to maintain the integrity of the election process. Yet a majority of this Court entirely ignores this statutory framework in a way that instills doubt in the minds of many Michigan voters regarding the integrity of the election process. After all, is it not foreseeable that designating only a single partisan election inspector to serve as the lone challenger liaison in a precinct will raise partisan concerns? The fact remains that in many instances, the manual will *force* challengers to communicate with a challenger liaison who will not be affiliated with the challenger's political party or will be affiliated with an opposition political party.

Yet a majority of the Court grants the Secretary of State carte blanche to publish these provisions of the manual under the guise of "procedure" while affording no weight to the substantive statutory rights of challengers and voters. The majority does so without the slightest concern that such unregulated authority will result in a lack of any public

6

discourse, transparency, and accountability in establishing election requirements and procedures. For these reasons, as more fully developed below, I dissent.[12]

## II. ANALYSIS

### A. THE "MICHIGAN CHALLENGER CREDENTIAL CARD"

MCL 168.732 addresses a challenger's right "to be present inside the room where the ballot box is kept" and provides:

> Authority signed by the recognized chairman or presiding officer of the chief managing committee of any organization or committee of citizens interested in the adoption or defeat of any measure to be voted for or upon at any election, or interested in preserving the purity of elections and in guarding against the abuse of the elective franchise, or of any political party in such county, township, city, ward or village, shall be sufficient evidence of the right of such challengers to be present inside the room where the ballot box is kept, provided the provisions of the preceding sections have been complied with. The authority shall have written or printed thereon the name of the challenger to whom it is issued and the number of the precinct to which the challenger has been assigned.

---

[12] As concluded in the majority opinion, plaintiffs' challenge to the manual's provisions that prohibited the possession of electronic devices in an [AVBPF] while absent voter ballots are being processed until the close of polls on Election Day is moot. The Legislature has amended MCL 168.765a to effectively permit the possession and limited use of electronic devices in [AVBPFs]. I also agree with the conclusions in the majority opinion that the revised manual unlawfully "require[s] a challenger at an [AVBPF] to raise an issue listed in MCL 168.733(1)(e) to a challenger liaison who is not also an election inspector at that facility," see Part II(B) of this opinion, and that "an election inspector cannot decline to record [a challenge] on the basis that they believe the explanation provided is lacking or insufficient," see Part II(C) of this opinion. These three points represent the extent of my agreement with the Court's majority opinion.

7

As applied here, a challenger is granted the "*right . . .* to be present inside the room where the ballot box is kept" by presenting "authority"[13] that (1) is signed by the recognized chairman of any political party, (2) contains the written or printed name of the challenger, and (3) contains the precinct number for the challenger's assigned precinct.[14] Such authority "shall be sufficient evidence of the right of such challengers to be present inside the room where the ballot box is kept[.]"[15]

The Secretary of State relies on MCL 168.31[16] to support the new rules regarding a challenger's right to be present. The revised manual provides, in pertinent part:

---

[13] Given that the statute later refers to evidence, "authority" here plainly means the source of "[t]he official right or permission to act, esp. to act legally on another's behalf[.]" *Black's Law Dictionary* (12th ed).

[14] MCL 168.732 (emphasis added).

[15] *Id*.

[16] MCL 168.31(1) provides as follows:

> The secretary of state shall do all of the following:
>
> (a) . . . [I]issue instructions and promulgate rules pursuant to the [APA] for the conduct of elections and registrations in accordance with the laws of this state.
>
> (b) Advise and direct local election officials as to the proper methods of conducting elections.
>
> (c) Publish and furnish for the use in each election precinct before each state primary and election a manual of instructions that includes specific instructions on assisting voters in casting their ballots, directions on the location of voting stations in polling places, procedures and forms for processing challenges, and procedures on prohibiting campaigning in the polling places as prescribed in this act.
>
> * * *

8

Under Michigan law, each challenger present at a polling place or an absent voter ballot processing facility must possess an authority signed by the chairman or presiding officer of the organization sponsoring the challenger. This authority, also known as the *Michigan Challenger Credential Card*, must be on a form promulgated by the Secretary of State. The blank template credential form is available on the Secretary of State's website. The entire credential form, including the challenger's name, the date of the election at which the challenger is credentialed to serve, and the signature of the chairman or presiding officer of the organization appointing the challenger, must be completed. If the entire form is not completed, the credential is invalid and the individual presenting the form cannot serve as a challenger. The credential may not be displayed or shown to voters.

A credential form may be digital and may be presented on a phone or other electronic device. If a challenger uses a digital credential, the credential must include all of the information required on the template credential form promulgated by the Secretary of State. A digital credential should not include any information or graphics that are not included or requested on the template credential form. If a challenger using a digital credential is serving in an absent voter ballot processing facility on Election Day, the challenger must display the credential to the appropriate election official, gain approval to enter the facility, and then store the device in a place outside of the absent voter ballot processing facility.[17]

The first question is whether the manual's call for exclusive use of the Secretary's newly created "*Michigan Challenger Credential Card*" is within the Secretary of State's authority under MCL 168.31(1)(c), which specifically mandates that the Secretary of State publish and furnish a manual of instructions for use in every precinct before every primary and general election. MCL 168.31(1)(c) specifically provides that the manual include: (1) "specific instructions on assisting voters in casting their ballots," (2) "directions on the

---

(e) Prescribe and require uniform forms, notices, and supplies the secretary of state considers advisable for use in the conduct of elections and registrations.

[17] *The Appointment, Rights, and Duties of Election Challengers and Poll Watchers* (May 2022), pp 4-5.

9

location of voting stations in polling places," (3) "procedures and forms for processing challenges," and (4) "procedures on prohibiting campaigning in the polling places as prescribed in this act."

Critical to understanding the Secretary's authority to impose challenger-certification requirements in the manual is MCL 168.732, which, as already noted, provides three requirements that "shall be sufficient evidence" of a challenger's right "to be present inside the room where the ballot box is kept . . . ." The manual properly instructs that "each challenger present at a polling place or an absent voter ballot processing facility must possess an *authority* signed by the chairman or presiding officer of the organization sponsoring the challenger."[18] This instruction would be consistent with MCL 168.732 if the instruction were based only upon the three substantive requirements that establish a challenger's credentials. But the manual strays from MCL 168.732 by claiming that "[t]his authority" refers to "*the Michigan Challenger Credential Card*," which "must be on a form promulgated by the Secretary of State."[19] And "[i]f the entire form is not completed, the credential is invalid and the individual presenting the form cannot serve as a challenger."[20] But MCL 168.732 neither requires the newly created Michigan Challenger Credential Card nor does it mention any requirement that the "authority" be shown on "a form promulgated by the Secretary of State." The Legislature has exercised its plenary power to establish

---

[18] *The Appointment, Rights, and Duties of Election Challengers and Poll Watchers* (May 2022), p 4 (emphasis added).

[19] *The Appointment, Rights, and Duties of Election Challengers and Poll Watchers* (May 2022), p 4.

[20] *The Appointment, Rights, and Duties of Election Challengers and Poll Watchers* (May 2022), pp 4-5.

10

both the substance and process for credentialing challengers by enacting MCL 168.732, and nowhere does that statute suggest that a challenger's statutory credentials can be invalidated because they were not presented on a Michigan Challenger Credential Card. Thus, even if the Secretary of State had properly promulgated the requirement to use the Michigan Challenger Credential Card pursuant to the APA (which she did not), the validity of that administrative rule would be highly questionable because it would conflict with MCL 168.732.[21]

For its part, MCL 168.31(1)(c) only provides the Secretary of State authority, in publishing the manual, to offer "procedures and forms for processing challenges[.]" But the Michigan Challenger Credential Card does not relate at all to "processing challenges." The Michigan Challenger Credential Card instead relates to a prospective challenger's credentials, which, if not established per the newly revised rules, precludes that person from functioning as a challenger. The requirement of a Michigan Challenger Credential Card has nothing to do with the Secretary's authority to outline procedures and draft forms for "processing challenges" and instead creates a threshold requirement, such that "[i]f the entire form is not completed, the credential is invalid and the individual presenting the form

---

[21] Notably, the state has done away with mandates for in-person identification for voting, and in a similar manner, the Legislature made a policy judgment to provide challengers broader access to polling locations to observe and confirm the legality of vote-counting processes. But now, the Secretary of State imposes novel mandates to restrict the access of observers to the electoral process. These limits find no basis in the relevant statute and amount to a revision by the Secretary of State of controlling policy decisions properly made by the Legislature. Just as this Court or some agency cannot replace the Legislature's policy decisions to substantially open up voting without identification, so also the Secretary cannot do the same for challengers simply because she is skeptical of their use or potential for abuse.

cannot serve as a challenger."[22]  In other words, the credential-card requirement prevents a challenge from being processed at all.  This distinction is reflected in the structure of the statute itself, with MCL 168.727 addressing the process for challenges while MCL 168.731 and MCL 168.732 address credentials for challengers.  Thus, although MCL 168.31(1)(c) provides authority for the Secretary to require "procedures and forms for processing challenges," it provides no authority for the Secretary to require "procedures and forms for credentialing challengers."

In the absence of textual support from MCL 168.31(1)(c), a majority of this Court pivots to the Secretary of State's general power under MCL 168.31(1)(e) to "[p]rescribe and require uniform forms, notices, and supplies the Secretary of State considers advisable for use in the conduct of elections and registrations."  The Secretary's position fares no better under this provision.  First, it is questionable whether "the conduct of elections" includes the credentialing process, which is what the manual's Michigan Challenger Credential Card purports to govern.  Rather, the credentialing process relates to a threshold question whether a challenger may even participate in "the conduct of elections."  After all, the manual provides that "[i]f the entire form is not completed, the credential is invalid and the individual presenting the form *cannot serve* as a challenger."[23]  Second, MCL 168.31(1)(c) relates to the Secretary's authority to promulgate the manual, and MCL 168.31(1)(e) does not.  MCL 168.31(1)(c) is the more specific provision describing the

---

[22] *The Appointment, Rights, and Duties of Election Challengers and Poll Watchers* (May 2022), pp 4-5.

[23] *The Appointment, Rights, and Duties of Election Challengers and Poll Watchers* (May 2022), pp 4-5 (emphasis added).

12

extent of the Secretary's authority to do the exact action at issue, i.e., publish a manual. And MCL 168.31(1)(c) expressly permits some actions but conspicuously does not provide the Secretary the authority asserted here.[24] The issue in this case stems entirely from the manual, and MCL 168.31(1)(c) is the only provision specifically relating to the Secretary's authority to issue the manual. Thus, the authority provided to the Secretary under MCL 168.31(1)(e) cannot reasonably be interpreted to supplement the Secretary's authority under MCL 168.31(1)(c). Third, MCL 168.31(1)(c) is the only provision in MCL 168.31(1) that mentions challenges.[25] Given that MCL 168.31(1)(c) does not address a challenger's credentials, it strains reason to believe that the Legislature intended MCL 168.31(1)(e) to provide the Secretary authority to not only prescribe and require uniform forms to regulate a challenger's credentials, but to do so in a manual without complying with the APA's rulemaking procedures.[26] Again, MCL 168.732 provides that only three requirements "shall be sufficient."

---

[24] See *Bradley v Saranac Community Sch*, 455 Mich 285, 298; 565 NW2d 650 (1997) ("This Court recognizes the maxim *expressio unius est exclusio alterius*; that the express mention in a statute of one thing implies the exclusion of other similar things.").

[25] *Parise v Detroit Entertainment, LLC*, 295 Mich App 25, 27-28; 811 NW2d 98 (2011) ("Statutes that relate to the same subject matter or share a common purpose are *in pari materia* and must be read together as one law . . . to effectuate the legislative purpose as found in harmonious statutes.") (quotation marks and citation omitted); *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 746; 641 NW2d 567 (2002) (explaining the presumption that language in a statute is not "superfluous, nugatory, and without independent effect") (quotation marks and citation omitted).

[26] Of course, the Secretary of State may choose to offer challengers the option of using the Michigan Challenger Credential Card. The APA defines "guideline" as "an agency statement or declaration of policy that the agency intends to follow, that does not have the force or effect of law, and that binds the agency but does not bind any other person." MCL 24.203(7). If a challenger opts to use the Michigan Challenger Credential Card, the Secretary is bound to accept the Michigan Challenger Credential Card. But a challenger

13

Also, the manual's Michigan Challenger Credential Card requirement applies to all challengers, not just to challengers appointed by political parties. That clearly contradicts MCL 168.731(1), which allows "an incorporated organization or organized committee of interested citizens other than political party committees . . . the right to appoint challengers, with a facsimile of the card to be used[.]" Plainly, the provision does not contemplate a card that must previously be known to the clerk or state, such as the Michigan Challenger Credential Card, but a card that is "to be used."

As explained by Justice VIVIANO,

it would make little sense for the nonpolitical-party challengers to use their own cards whereas political-party challengers cannot. Any distinction between MCL 168.731 and MCL 168.732 is not an invitation to the Secretary of State to use her authority under MCL 168.31(1) to add new requirements onto political-party challengers. Although she has the obligation to furnish a manual providing forms, nowhere does she have authority to make the use of those forms mandatory such that, even if a challenger satisfies all other statutory requirements, the challenger can be removed for failure to use the Secretary of State's preferred form. Indeed, as she admits, the Manual lacks the force of law—so how can it require outcomes different from those mandated by statute?[27]

In sum, MCL 168.732 provides the credentialing requirements that "shall be sufficient," and nothing in MCL 168.31 provides the Secretary of State power to impose additional requirements.

---

that opts not to use the Michigan Challenger Credential Card is not bound by the guideline and cannot be barred from the process merely for opting not to use the Secretary's preferred card.

[27] *O'Halloran*, 510 Mich at 987 (VIVIANO, J., dissenting); *DeVisser*, 510 Mich at 1012 (VIVIANO, J., dissenting).

14

## B. THE CHALLENGER LIAISON

The Secretary of State's 2022 revised manual imposes a new requirement that "[c]hallengers must not communicate with election inspectors other than the challenger liaison or the challenger liaison's designee unless otherwise instructed by the challenger liaison or a member of the clerk's staff." Before issuance of the Secretary's revised manual in 2022, challengers were allowed to directly communicate with election inspectors. Now, absent permission from the challenger liaison, "challengers must not communicate with election inspectors who are not the challenger liaison."[28]

Materially altering the 20-year practice of allowing challengers to directly communicate with election inspectors is not a matter of explanation, nor can it be characterized as instruction, clarification or guidance, or anything other than an enforceable rule. It is, therefore, a rule.[29] Indeed, the new requirement is premised on the acceptance

---

[28] Curiously, the revised manual states that challengers have the right to be treated with respect by election inspectors. Yet the manual also prohibits challengers from speaking with or interacting with election inspectors who are not the challenger liaison or the challenger liaison's designee, unless given explicit permission by the challenger liaison or a member of the clerk's staff. See *The Appointment, Rights, and Duties of Election Challengers and Poll Watchers* (May 2022), p 6.

[29] See *Faircloth v Family Independence Agency*, 232 Mich App 391, 404; 591 NW2d 314 (1998) ("The policies are not interpretive statements because they do not merely interpret or explain the statute or rules from which the agency derives its authority. Rather, they establish the substantive standards implementing the program."). The "explanation" provided by an interpretive statement must be geared toward uncertain statutory language, where the implementing agency alerts the public to what it believes the statute means, i.e., the interpretation "reminds affected parties of *existing* duties" rather than "creat[ing] *new* law, rights or duties . . . ." *Tennessee Hosp Ass'n v Azar*, 908 F3d 1029, 1042 (CA 6, 2018) (quotation marks and citations omitted; emphasis added). See *Clonlara, Inc v State Bd of Ed*, 442 Mich 230, 241; 501 NW2d 88 (1993) ("[Interpretive rules] state the interpretation of ambiguous or doubtful statutory language which will be followed by the agency unless and until the statute is otherwise authoritatively interpreted by the courts.") (quotation marks and citation omitted); *id*. at 243-244 ("Interpretive rules are statements as to what

of an interpretation of MCL 168.733(1)(e) that has never, before today, been accepted by our courts, let alone been subjected to review under the APA.

A majority of this Court claims the challenger-liaison requirement does not have "the force and effect of law" as applied to challengers. But the majority confoundingly admits that "the limitation on speaking with any election inspector other than one identified as the challenger liaison is stated in mandatory terms[.]" The majority also admits that challengers who fail to comply with the challenger-liaison mandate may be expelled. Attempting to justify how this enforceable mandate is not a rule because it lacks "the force and effect of law," the majority highlights that "the manual does not instruct that inspectors are *required* to expel challengers who violate that prohibition." But the absence of one potential legal effect in the manual (i.e., automatic expulsion) for the violation of a mandatory term (i.e., the prohibition on speaking to anyone other than the challenger liaison) does not somehow negate the force and legal effect of that mandatory term.

The majority opinion then adds that expelling challengers is justified because "MCL 168.678 already provides election inspectors with the 'full authority to maintain peace, regularity and order at its polling place, and *to enforce obedience to their lawful commands* during any primary or election and during the canvass of the votes after the poll is closed.' "[30] This explanation does not hold water. If election inspectors are to demand "obedience to their *lawful* commands," they must presume the manual's challenger-liaison

---

the agency thinks a statute or regulation means; they are statements issued to *advise* the public of the agency's construction of the law it administers.") (quotation marks and citation omitted).

[30] Emphasis added.

requirement has "*the force and effect of law*"; otherwise, the election inspector would not be issuing "*lawful* commands." Moreover, the general grant of authority under MCL 168.768 does not mean that any action the Secretary takes pursuant to that authority is not a rule.[31]

Further, the limitation at issue is in contradiction to the goal of party parity expressed elsewhere in the Michigan Election Law. MCL 168.674(1) requires that "the city and township board of election commissioners . . . shall appoint for each election precinct and early voting site at least 3 election inspectors and as many more as in the board's opinion is required for the efficient, speedy, and proper conduct of the election." "The board of election commissioners shall appoint at least 1 election inspector from each major political party and shall appoint an equal number, as nearly as possible, of election inspectors in each election precinct from each major political party."[32] And election-inspector applicants are required to indicate their "political party affiliation" on their application.[33] In this case, the Secretary of State, herself partisan, published a manual that

---

[31] See MCL 24.207 (defining "rule" as including an agency action "that implements or applies law enforced or administered by the agency"); see also *United States v Two Hundred Thousand Dollars ($200,000) in US Currency*, 590 F Supp 866, 871 (SD Fla, 1984) ("That Form 4790 is a 'legislative' rule rather than an interpretative one or a general statement of policy is apparent from the fact that the form was clearly intended to implement the pertinent statute and the regulation; [5 USC] 551(4) of the [federal] APA distinguishes agency statements designed to *implement* a law from those designed to *interpret* it.") (citations omitted).

[32] MCL 168.674(2).

[33] MCL 168.677(2).

17

purports to require local clerks, themselves partisan, to choose a single "challenger liaison," who may well be a partisan election inspector.

Even more egregious is that the Secretary of State's new rules allow a local clerk to designate as the challenger liaison members of their staff who are not election inspectors, which plainly conflicts with MCL 168.733(1)(e). The Secretary concedes that challenger liaisons at AVBPFs are also members of the local clerk's staff, not election inspectors. MCL 168.765a(2) provides that "the board of election commissioners shall appoint the election inspectors to absent voter counting boards not less than 21 days before the election at which the absent voter counting boards are to be used. [MCL 168.673a] and [MCL 168.674] apply to the appointment of election inspectors to absent voter counting boards under this section."[34] In *Hanlin v Saugatuck Twp*,[35] the Court of Appeals explained:

> These election inspectors are to be appointed by the city and township board of election commissioners. MCL 168.674. To be appointed an election inspector, a person shall file an application with a city, township, or village clerk in the county where the person wishes to serve as an election inspector. MCL 168.677(1). In addition, the person shall be a qualified voter, be of good reputation, and have sufficient education and clerical ability to perform the duties of the office. *Id*. A person shall not be appointed as an election inspector if the person or any member of the person's immediate family is a candidate for nomination or election or has been convicted of a felony or an election crime. MCL 168.677(3). Further, a person shall not be permitted to act as an election inspector if the person has not attended a school of instruction or passed an examination given by the election commission. *Id*.

---

[34] MCL 168.673a and MCL 168.674 are the provisions relating to the appoint of election inspectors generally.

[35] *Hanlin v Saugatuck Twp*, 299 Mich App 233, 245; 829 NW2d 335 (2013).

18

The *Hanlin* Court rejected the assertion that "the township clerk nevertheless had the authority to act as an election inspector because, as the township clerk, she was the election official in charge of the election[.]"[36]  The Court held that

> the Legislature has provided the precise manner in which persons may serve as election inspectors.  When the Legislature has provided in MCL 168.677 the method by which a person may serve as an election inspector, a person may not ignore those requirements and serve as an election inspector without first being appointed by the board of election commissioners.[37]

The same is true here.  The local clerk cannot simply appoint themselves or a member of their staff as an election inspector, let alone appoint them as a challenger liaison.  And this makes abundant sense given that, after all, the election inspectors, who are to be selected in compliance with the partisan parity requirement, are there in large part to inspect and check the process and procedure of the clerks managing the elections.  Identifying a member of the clerk's staff to be an election inspector or, more specifically, the challenger liaison, is akin to leaving the fox to guard the hen house.  While the Court's majority acknowledges that the manual unlawfully "require[s] a challenger at an [AVBPF] to raise an issue listed in MCL 168.733(1)(e) to a challenger liaison who is not also an election inspector at that facility," the majority has nonetheless put blinders on to ignore the basic and undisputable fact that requiring a single challenger liaison will materially alter the balance built into this statutory structure, leaving roughly half the challengers without anyone who will listen—or at least leaving them with the impression that they are not being heard.

---

[36] *Id*. at 245-246.

[37] *Id*. at 246.

Along these same lines, MCL 168.733(1)(e) is clearly intended to give challengers an opportunity to raise concerns about the integrity of the election process. There is no restrictive language suggesting that challengers cannot and should not raise an issue relating to any election inspector who is perceived to be improperly handling a ballot or violating an election law, regulation, or procedure. Yet if a challenger were to raise these issues regarding a challenger liaison's perceived misconduct, the challenger is restricted to raising these concerns to the very person who might have committed misconduct. Clearly, the Legislature did not intend that a single election inspector or clerk designee be granted sole authority to determine whether that very person made a mistake. Thus, limiting the ability of a challenger to address an issue with an election inspector who may be on sight and, instead, requiring all challengers to bring their concerns to a single challenger liaison changes the procedure set out in the statute. The lower courts' reasoning and conclusions on this point are eminently reasonable.

Of greater concern, as noted by the Court of Claims, "[t]he authority to designate a 'challenger liaison' is absent from the Michigan Election Law—in fact, the very label appears nowhere in [the] statute." There is no statute, caselaw, or promulgated rule that supports the Secretary of State's desire to restrict the ability of challengers to communicate challenges or violations to election inspectors. And there is no authority allowing an election inspector or other person designated by a partisan clerk to possess some "special status" other than being named a chairperson.[38] The Michigan Election Law is clear. It

---

[38] MCL 168.674(2) provides that "[t]he board of election commissioners shall designate 1 appointed election inspector as chairperson," who has some additional administrative duties, such as signing a receipt for unused and spoiled ballots, see MCL 168.741, or receiving packages of absent voter ballots, see MCL 168.762.

simply does not allow for the Secretary to afford any particular election inspector authority beyond that of any other election inspector. Indeed, "[e]*ach* board of election inspectors *shall possess full authority* to maintain peace, regularity and order at its polling place, and to enforce obedience to their lawful commands during any primary or election and during the canvass of the votes after the poll is closed."[39]

Yet a majority of the Court ignores the above statutory structure and instead hangs its interpretative hat on the Secretary of State's preferred reading of a single statutory term. The majority asserts that under MCL 168.733(1)(e) "an election inspector" does not mean "any election inspector," as the lower courts concluded. But "[a]n" is an indefinite article that identifies a single, but not a specific, person or thing. As explained by the *Oxford English Dictionary*,[40] the term "a" is "[u]sed in an indefinite noun phrase referring to something not specifically identified (and, frequently, mentioned for the first time) but treated as one of a class: one, some, any (the oneness, or indefiniteness, being implied rather than asserted)."[41] The single but "not specific person or thing" here is an election inspector, of which there must be at least three at any given precinct. Thus, the majority's repeated observations that the statute "is silent regarding who is to receive any 'challenges' " simply means that the statute does not restrict the challenger's right as to

---

[39] MCL 168.678 (emphasis added).

[40] Oxford English Dictionary online <https://www.oed.com/dictionary/a_adj> (rev 2008) (accessed August 20, 2024).

[41] See, e.g., *McFadden v United States*, 576 US 186, 191; 135 S Ct 2298; 192 L Ed 2d 260 (2015) (explaining that "*a* controlled substance" refers to an "undefined or unspecified" controlled substance, rather than a specific and limited controlled substance) (quotation marks and citations omitted).

21

which inspector the challenger can present challenges. But the manual undermines this common usage by reading "an election inspector" as referring to a "specific person or thing," namely, the designated challenger liaison of which there is only one per precinct. In other words, by designating a single person, who may or may not be an election inspector, as the person to whom challenges are to be presented, the Secretary converts the indefinite article into a definite article, which is the lone challenger liaison.

## C. THE "IMPERMISSIBLE CHALLENGES" PROVISIONS

The Secretary of State correctly observes that the statutes only mandate recording challenges in three instances. These instances are described in MCL 168.727(1), which provides:

> [1] An election inspector shall challenge an applicant applying for a ballot if the inspector knows or has good reason to suspect that the applicant is not a qualified and registered elector of the precinct, or if a challenge appears in connection with the applicant's name in the registration book. [2] A registered elector of the precinct present in the polling place may challenge the right of anyone attempting to vote if the elector knows or has good reason to suspect that individual is not a registered elector in that precinct. [3] An election inspector or other qualified challenger may challenge the right of an individual attempting to vote who has previously applied for an absent voter ballot and who on election day is claiming to have never received the absent voter ballot or to have lost or destroyed the absent voter ballot.

The third type of challenge has not been the subject of these proceedings and is mentioned only for completeness. The subsection's first challenge relates to voter qualifications, but it states, "An *election inspector* shall challenge an applicant . . . if the inspector knows or has good reason to suspect that the applicant is not a qualified and registered elector of the

22

precinct . . . ."[42]   The second applicable challenge states, "A *registered elector* of the precinct *present in the polling place* may challenge the right of anyone attempting to vote if the elector knows or has good reason to suspect that individual is not a registered elector in that precinct."[43]   MCL 168.727(2) then provides as follows:

> Upon a challenge being made under subsection (1), an election inspector shall immediately do all of the following:
>
> (a) Identify as provided in [MCL 168.745] and [MCL 168.746] a ballot voted by the challenged individual, if any.
>
> (b) Make a written report including all of the following information:
>
> (*i*) All election disparities or infractions complained of or believed to have occurred.
>
> (*ii*) The name of the individual making the challenge.
>
> (*iii*) The time of the challenge.
>
> (*iv*) The name, telephone number, and address of the challenged individual.
>
> (*v*) Other information considered appropriate by the election inspector.
>
> (c) Retain the written report created under subdivision (b) and make it a part of the election record.
>
> (d) Inform a challenged elector of his or her rights under [MCL 168.729.]

---

[42] MCL 168.727(1) (emphasis added).

[43] *Id*. (emphasis added).

23

By contrast, the 2022 revised manual modifies the standard for challenges that must be recorded by establishing "permissible" and "impermissible" challenges. It provides, in pertinent part:

**Challenges to a Voter's Eligibility**

A challenger may make a challenge to a voter's eligibility to cast a ballot only if the challenger has a good reason to believe that the person in question is not a registered voter. There are four reasons that a challenger may challenge a voter's eligibility; **a challenge made for any other reason than those listed below is impermissible.** The four permissible reasons to challenge a voter's eligibility are:

1. The person is not registered to vote;

2. The person is less than 18 years of age;

3. The person is not a United States citizen; or

4. The person has not lived in the city or township in which they are attempting to vote for 30 or more days prior to the election.

The challenger must cite one of the four listed permissible reasons that the challenger believes the person is not a registered voter, and the challenger must **explain the reason the challenger holds that belief.** If the challenger does not cite one of the four permitted reasons to challenge this voter's eligibility, or cannot provide support for the challenge, the challenge is impermissible.[44]

The parties' arguments and the majority opinion focus on potential discrepancies between MCL 168.727(1) and the earlier mentioned statute, MCL 168.733(1)(c), which provides for a challenger's rights. But these arguments miss the point. In fact, under the Michigan Election Law, an elector or challenger is vested by statute with authority to bring a challenge that does not squarely fall within the discrete parameters labeled "permissible"

---

[44] *The Appointment, Rights, and Duties of Election Challengers and Poll Watchers* (May 2022), pp 11-12.

24

challenges but may still provide a basis that implicates a voter's eligibility. There are myriad challenges that may or may not be, as the majority states, within "the scope of a challenge." For instance, a challenger may believe a voter had already voted in another precinct.[45] Yet that would be an impermissible challenge under the manual. Turning to categories of challenges that are permissible under the new manual, a challenger may reasonably believe that a voter is not of age. A challenger may suspect that a voter is not a United States citizen because they have previously seen the voter present a Permanent Resident Card yet not be aware the voter had later become a United States citizen. Of course, whether a "person has not lived in the city or township in which they are attempting to vote for 30 or more days prior to the election"[46] presents fertile ground for a plethora of challenges that may not appear directly related to a "permissible" challenge. But the manual provides concrete and rigid requirements and provides the election inspector discretion to determine whether that challenge falls within the designated categories of permissible challenges. The guidance plainly allows for the dismissal of voter-registration challenges that are otherwise permitted under the Michigan Election Law.

Nothing in MCL 168.727 purports to give election inspectors the discretion to determine sua sponte whether a challenge is permissible. In fact, I agree with the majority's

---

[45] MCL 168.730(3) provides that "[a] challenger may be designated to serve in more than 1 precinct." Double voting is rare though sometimes happens. See Mauger, *Macomb County clerk reports 'possible double voting' by 4 individuals*, Detroit News (August 15, 2024), available at <https://www.detroitnews.com/story/news/politics/2024/08/15/macomb-county-clerk-reports-possible-double-voting-by-4-individuals/74818713007/> (accessed August 18, 2024) [https://perma.cc/HMX4-QYSL].

[46] *The Appointment, Rights, and Duties of Election Challengers and Poll Watchers* (May 2022), p 12.

conclusion that an election inspector cannot decline to record a challenge on the basis that they believe the explanation provided is lacking or insufficient on the following basis:

> MCL 168.727(2) requires that the election inspector, "shall immediately" "[m]ake a written report" "[u]pon a challenge being made under [MCL 168.727(1)]." MCL 168.727(2)(b). The temporal immediacy requirement is activated when the challenge is made, not when the challenge is determined to be valid. Such an immediacy requirement would be undermined by requiring an election inspector to assess the validity of a challenge before recording it.[47]

Yet I fail to see how this reasoning does not apply equally to all challenges, whether deemed permissible or impermissible under the manual. If a challenge does not fall within the specifically delineated categories of permitted challenges, it is not a permissible challenge under the plain terms of the new manual. Further, the manual improperly allows an inspector the power to eliminate any record of the challenge and, therefore, any opportunity to review this determination in the future.

I also conclude that the Secretary lacked authority to authorize the ejection of election challengers from the polling places and counting centers. The Michigan Election Law expressly provides for the removal of challengers in limited circumstances, and as the Court of Appeals concluded, Michigan law "does not authorize [the Secretary] to adopt a rule providing other reasons for expulsion."[48] For example, MCL 168.733(3) provides that "disorderly conduct is sufficient cause for the expulsion of a challenger from the polling place or the counting board." Accordingly, "unless the repeated 'impermissible' challenges rise to the level of disorderly conduct, . . . there is no basis in law for the

---

[47] Alterations in original.

[48] *O'Halloran*, ___ Mich App at___; amended slip op at 13.

challenger's expulsion."[49] So while the Michigan Election Law does authorize the removal of challengers who are intoxicated or engage in "disorderly conduct," the law does not permit the Secretary to lower the statutory threshold of conduct necessary to remove a challenger from a place they otherwise have an express statutory right to remain.[50]

## III. CONCLUSION

Contrary to the conclusions espoused in the majority opinion, the revised manual disseminated by the Secretary of State imposes on Michigan's election process duties and obligations found nowhere in the Michigan Election Law. Indeed, every lower-court judge has held that these revisions cannot be characterized as explanatory to elude public discussion of these provisions under the APA. While agreeing with the lower courts that three provisions of the revised manual are unlawful, a narrow majority of this Court endorses the remainder of the provisions of the revised 2022 manual despite the lack of transparency in which these revisions assumed the force and effect of law. This result will not instill confidence that the Michigan election process is fair, open, and transparent.

In addition, every lower-court judge has held that these revisions conflict with the Michigan Election Law. I agree. The Secretary of State lacks authority to require a Michigan Challenger Credential Card, the absence of which now bars otherwise properly authorized election challengers from participating in upholding the integrity of the election process. Similarly, the Secretary's requirement that challengers lodge all election

---

[49] *O'Halloran*, ___ Mich App at___; amended slip op at 13.

[50] See MCL 168.732 (stating that credentialed challengers have the "right . . . to be present inside the room where the ballot box is kept").

27

challenges through a single designated challenger liaison, who may or may not be an election inspector, unduly restricts the rights of election challengers to make challenges through any election inspector on site, as has been the practice for years prior to issuance of the revised manual. Finally, nothing in the Michigan Election Law permits the newly created challenger liaison to segregate challenges on the basis of the liaison's determination of whether the challenge has merit. For these reasons, I dissent from the majority opinion and would affirm the lower courts' decisions in full.

Brian K. Zahra
David F. Viviano